264 N.J. Super. 222 (1993)
624 A.2d 584
CATHY BRYANT, PLAINTIFF-RESPONDENT,
v.
JAMES BURNETT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1993.
Decided April 22, 1993.
*223 Before Judges KING, BRODY and THOMAS.
Patrick T. Cronin argued the cause for appellant (Tomar, Simonoff, Adourian & O'Brien, attorneys; Mr. Cronin, on the brief).
No brief filed on behalf of respondent.
The opinion of the court was delivered by KING, P.J.A.D.
On this appeal, defendant claims that the evidence did not support the permanent restraining order entered against him on this domestic violence complaint. Plaintiff filed a sworn complaint under the Prevention of Domestic Violence Act of 1991 (Act), N.J.S.A. 2C:25-17 to -33, which sought temporary and permanent restraints against defendant. She alleged that on January 7, 1992 defendant hit her, pulled her hair, knocked her to the floor and threatened her with additional violence. She required emergency room treatment.
The Millville Municipal Court judge issued a temporary restraining order on January 7, 1992 and set a final hearing date for January 15. Defendant was required to pay for the emergency *224 room services and was ordered not to return to the residence where he and plaintiff had lived. Defendant did not appear at the January 15 final hearing in the Superior Court before Judge Forester. He was in jail, apparently on another charge. After taking testimony from the plaintiff, the judge continued the temporary restraint and issued a bench warrant for defendant. The final hearing was rescheduled and held on March 18, 1992. By that time, plaintiff was incarcerated on an unrelated charge but she, along with defendant, did appear at the March 18 hearing.
The record reveals that at the time of the January 7 altercation, plaintiff had been living with defendant for three months. Plaintiff testified that, "[h]e asked me to ... come stay with him." She kept her possessions at defendant's address, and had lived there continuously for three months until the January 7 incident.
Defendant said that plaintiff had no place to stay and he offered her the opportunity to stay at his place as a favor. He did not intend any agreement to live together on any ongoing or permanent basis. He said, "She was supposed to get her own place," apparently after she found a job.
By the time of the March 18 final hearing, plaintiff, though then in jail, had obtained her own residence. She no longer had any possessions at defendant's residence. The judge's final, permanent order excepts defendant's residence from the scope of the restraint. Defendant was otherwise restrained from any contact with plaintiff after she was released from jail. Defendant claims that even though he and plaintiff had lived together for three months, their intent at that time that the arrangement was "temporary" deprived plaintiff of standing to bring a complaint under the Act, since she was not a member of his "household."
The Act states that "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting." N.J.S.A. 2C:25-18. The Act defines "Victim of Domestic Violence" this way:
[A] person protected under this act ... shall include any person who is 18 years of age or older .. . who has been subjected to domestic violence by a spouse, former *225 spouse, or any other person who is a present or former household member, or a person with whom the victim has a child in common. [N.J.S.A. 2C:25-19(d).]
The former domestic violence statute, N.J.S.A. 2C:25-3 to -16, L. 1981, c. 426, required that the victim have "cohabited" with defendant within the definition of that act.[1] The new Act deleted this definition of victim and adopted the more general term "present or former household member" in place of "cohabitants." Desiato v. Abbott, 261 N.J. Super. 30, 33, 617 A.2d 678 (Ch.Div. 1992); see Senate Judiciary Committee, Statement to Senate, No. 2230 at 1 (Feb. 21, 1992). The new Act contains no requirement that a household member be of the opposite sex or related to the victim, as the former act did. See Maura Beth Johnson, Note, "Home Sweet Home?: New Jersey's Prevention of Domestic Violence Act of 1991," 17 Seton Hall Legis.J. 234 (1993).[2] The new Act further provides:
[T]he Legislature ... encourages the broad application of the remedies available under this act in the civil and criminal courts of this State. It is further intended that the official response to domestic violence shall communicate the attitude that violent behavior will not be excused or tolerated, and shall make clear the fact that the existing criminal laws and civil remedies created under this act will be enforced *226 without regard to the fact that the violence grows out of a domestic situation. [N.J.S.A. 2C:25-18.]
Our courts have applied the Act to non-marital situations where the parties had no children. Torres v. Lancellotti, 257 N.J. Super. 126, 607 A.2d 1375 (Ch.Div. 1992) (defendant was plaintiff's live-in male friend of eight years). Most recently, the Act was applied to a situation in which a young man and woman were "de facto" household members but maintained separate legal residences. Desiato, supra, 261 N.J. Super. at 34, 617 A.2d 678. The parties were constant companions, stayed overnight together frequently, and shared certain property. Id. at 34-35, 617 A.2d 678.
We find that Judge Forester correctly applied the Domestic Violence Act of 1991 in this case. The parties were members of the same household at the time of the domestic violence charged. Intent as to the permanency of the relationship and the circumstances of the invitation or agreement to live together were irrelevant in this case where plaintiff had lived in defendant's household for three months. No precise period of residence is specified by the statute to make one a household member. This case certainly involved more than assaultive conduct between casual friends or relative strangers and qualifies as "domestic violence."
The defendant also claims that the judge's decision was not based on sufficient credible evidence in the record. We disagree. A trial judge's ruling on the facts should not be disturbed unless "so wholly insupportable as to result in a denial of justice." Rova Farms Resort, Inc. v. Investors Insurance Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974). "Our task is not to reweigh the evidence but to determine if sufficient evidence exists." Roe v. Roe, 253 N.J. Super. 418, 431, 601 A.2d 1201 (App.Div. 1992).
We find that the record contains adequate proof, by the requisite preponderance of the evidence standard, N.J.S.A. 2C:25-29(a), of the episode of domestic violence and supports the exercise of jurisdiction and the permanent restraining order. Defendant overlooks the fact that plaintiff's sworn complaint, filed under *227 N.J.S.A. 2C:25-28(h) and describing the violence, was part of the record before the judge at both the January and the March hearings. Moreover, defendant made no effort to challenge the prior findings of domestic violence, made by both the Municipal Court judge and the Superior Court judge and based on the sworn complaint, when he was present at the March 18 final hearing. At that hearing the defendant, represented by counsel, testified under oath and challenged only plaintiff's status as an eligible "household member" under N.J.S.A. 2C:25-19(d). Since defendant did not challenge the finding of domestic violence at the trial level, he may not do so now. Neider v. Royal Indemnity Insurance Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
At the March 18 final hearing everyone operated on the assumption that the acts of violence were not contested. Indeed, an inference arises from defendant's failure to challenge the finding at the trial level that he could not have effectively done so. Nonetheless, the better practice requires the trial judge to elicit basic jurisdictional facts from the plaintiff by sworn testimony on the record, including any acts of violence, rather than simply relying on allegations in the sworn complaint. Specific findings of jurisdictional facts should be made on the record, R. 1:7-4, unless the parties stipulate and consent to these facts, in open court, again on the record.
Affirmed.
NOTES
[1] N.J.S.A. 2C:25-3, repealed by L. 1991, c. 261, § 20, effective date November 12, 1991, stated:

As used in this act:
a. "Cohabitants" means emancipated minors or persons 18 years of age or older of the opposite sex who have resided together or who currently are residing in the same living quarters, persons who together are the parents of one or more children, regardless of their marital status or whether they have lived together at any time, or persons 18 years of age or older who are related by blood and who currently are residing in the same living quarters.
[2] Throughout the 1991 Act, the legislators sought to clarify and expand the definitions and terms of the 1981 Act. These changes included a substitution of the term "victim of domestic violence" for "cohabitants." Moreover, the 1991 Act contains no requirement that a cohabitant be a member of the opposite sex or related to the victim. Thus, the 1991 Act creates the potential for actions by elderly people who are abused by "caretakers who are not related to them [or] lesbians and gay men caught in violent relationship." Finally, the definition of "domestic violence" has also been expanded to include homicide, terroristic threats and criminal trespass, thus bringing the total number of domestic violence offenses to thirteen. [Johnson, supra, 17 Seton Hall Legis. J. at 246 (footnotes omitted).]