294 N.J. Super. 312 (1996)
683 A.2d 244
JILL SPERLING, PLAINTIFF,
v.
DANIEL TEPLITSKY, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Monmouth County.
Decided July 11, 1996.
*315 Peter M. O'Mara for plaintiff.
Charles Shaw, III, for defendant (Fay, Pandolfe, Shaw, Rubino & Vecchione, attorneys).
O'HAGAN, J.S.C.
Plaintiff, Jill Sperling, was granted a temporary restraining order against Daniel Teplitsky, as a result of an incident occurring on January 19, 1996. At the final hearing, N.J.S.A. 2C:25-29, *316 defendant alleged the court did not have jurisdiction, contending that his actions occurred in New York City and not within Monmouth County, New Jersey, and further that he and Ms. Sperling did not have any type of domestic relationship whatsoever since 1991. At the hearing, it was established that the parties began dating in 1988, and terminated their relationship in 1990, according to plaintiff, although defendant contended that the dating relationship ended in 1991. Stated more directly, defendant argues the court does not have jurisdiction unless the alleged act of domestic violence occurred within the boundaries of Monmouth County. Secondly, he maintains that since the parties concluded their dating relationship at the latest in 1991, the Prevention of Domestic Violence Act of 1991 (the Act), N.J.S.A. 2C:25-17 to -33, has no application to events occurring on January 19, 1996. Rather, he maintains, plaintiff is left to remedies available to her pursuant to the Code of Criminal Justice even if it is determined the incident occurred in New Jersey. Although defendant's contention regarding the situs of the alleged violence has no merit, the court concludes that the passage of some four plus years (five plus years according to plaintiff) following the termination of the dating relationship mandates the denial of the final restraining order, N.J.S.A. 2C:25-17 to -33, under the circumstances of this case.
The essential facts underlying this dispute are as follows:
On January 19, 1996, defendant, Daniel Teplitsky, kicked a car, then occupied by plaintiff and owned by her live-in boyfriend, at least ten times, resulting in numerous and sundry dents to the vehicle. The incident occurred at night when the car was parked in a dimly lit area. While the defendant kicked the car he expressed no harsh or angry words towards plaintiff. At the time of the incident, defendant knew the car was owned by plaintiff's live-in boyfriend, with whom he had an ongoing dispute regarding business issues not in any way related to plaintiff. Plaintiff maintained the incident occurred in Marlboro Township, Monmouth County, while defendant contended that the incident occurred *317 in New York City. Defendant argues the totality of the circumstances surrounding the happening of the incident corroborate his version that the incident occurred in New York City and not in Marlboro Township.
It must be understood initially that the remedies available pursuant to the Act are civil, as opposed to criminal, in nature. Roe v. Roe, 253 N.J. Super. 418, 428, 601 A.2d 1201 (App.Div. 1992). With certain exceptions such as zoning disputes, for instance, civil actions ordinarily may be brought in the jurisdiction where the defendant can be served with a complaint without regard to where the incident occurred. R. 4:4-4; See Berger v. Paterson Veterans Taxi, 244 N.J. Super. 200, 204-05, 581 A.2d 1344 (App.Div. 1990). Defendant apparently equates the statute in question with those statutes imposing criminal remedies and/or sanctions. N.J.S.A. 2C:1-1 to 98-4. For obvious reasons, state prosecution of a violation of a criminal statute must be conducted in the state where the criminal conduct occurred. State v. Sanders, 230 N.J. Super. 233, 236, 553 A.2d 354 (App.Div. 1989); See N.J.S.A. 2C:1-3.
The Legislature anticipated the issue raised herein by defendant, declaring in N.J.S.A. 2C:25-28 that
a plaintiff may apply for relief under this section in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides... N.J.S.A. 2C:25-28.
Further, it is to be noted that our court rules provide
... venue in domestic violence actions shall be laid in the county where either of the parties resides, in the county where the domestic violence offense took place, or in the county where the victim of domestic violence is sheltered. R. 5:7A(f).
Both parties are residents of Marlboro Township in Monmouth County. Therefore, the court has jurisdiction to resolve the issue even if the incident occurred in New York City, as alleged by defendant.
The more troubling issue presented in this case concerns the gap or time which separated the incident in question and the conclusion of the dating relationship between the parties. Since *318 the parties last had a dating relationship, as earlier noted, some four to five years prior to January 19, 1996, as alleged by defendant and plaintiff respectively, it is concluded that the statute to prevent domestic violence has no application. N.J.S.A. 2C:25-17 to -33. This conclusion is irresistible in a situation where the parties were never married, had no children together, and have had minimal contact since 1991.
Before specifically addressing the issues underlying this case, certain basics should be stated. Certainly domestic violence cannot be tolerated in any civilized society. N.J.S.A. 2C:25-17 to 33; Grant v. Wright, 222 N.J. Super. 191, 198, 536 A.2d 319 (App.Div.), certif. denied, 111 N.J. 562, 546 A.2d 493 (1988). Perhaps as the result of custom, practice, societal mores or other inappropriate reasons, in the past, victims of domestic violence were not adequately protected by the police, the courts, or society as a whole. See Corrente v. Corrente, 281 N.J. Super. 243, 247, 657 A.2d 440 (App.Div. 1995); N.J.S.A. 2C:25-17 to 33. Indeed, the Legislature found that thousands of persons in a domestic setting were victimized by acts of domestic violence on a yearly basis. N.J.S.A. 2C:25-18. Considering the underlying family dynamics along with competing pressures and issues existing in families, the Legislature determined more protection must be afforded victims of domestic violence. The Act was enacted, with the expressed intent that courts as well as law enforcement promptly and appropriately offer protection to victims of domestic violence. N.J.S.A. 2C:25-28; Bryant v. Burnett, 264 N.J. Super. 222, 224, 624 A.2d 584 (App.Div.), certif. denied, 134 N.J. 478, 634 A.2d 525 (1993). Indeed, victims of domestic violence are to be given "... the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18.
Determination concerning the applicability of the statute must begin with plaintiff. Does Ms. Sperling qualify as a victim of domestic violence? A victim of domestic violence has been defined as follows:
`Victim of domestic violence' means a person protected under this Act and shall include any person... who has been subjected to domestic violence by a spouse, *319 former spouse, or any other person who is a present or former household member ... [including] any person regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common.... [and] also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

N.J.S.A. 2C:25-19d.
As noted, defendant acknowledged that a dating relationship existed between plaintiff and him and, indeed, for five or six months the parties lived together, and, consequently, they were, at one time, members of the same household. Plaintiff, therefore, argues that no further inquiry need be made and maintains that the time separating the conclusion of the dating relationship and January 19, 1996, is irrelevant. In effect, plaintiff argues the court must interpret the statute in accordance with its literal terms. See State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993). She contends the statute is clear and unambiguous on its face and, consequently, the court does not have the authority to consider other factors in construing its terms. Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225, 638 A.2d 1301 (1994). However, interpretation of a statute must start with a consideration of its purpose and what wrong the Legislature sought to redress. State v. Sutton, supra, 132 N.J. 471, 479, 625 A.2d 1132 (1993); Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987). Further, individual sections of a statute must be considered in the context of the entire statutory scheme. Beaudoin v. Belmar Tavern Owners Ass'n., 216 N.J. Super. 177, 184, 523 A.2d 256 (App.Div.), certif. denied, 107 N.J. 626, 527 A.2d 451 (1987). Thus, in appropriate circumstances, the literal wording of a statute must give way to clearly stated statutory intent. Fiore v. Consolidated Freightways, 140 N.J. 452, 466, 659 A.2d 436 (1995). Finally, it must be understood that the Legislature knew what it was doing when enacting the statute, Medical Soc. v. Dept. of Law & P. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990), and sought to achieve a reasonable result. See Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993). Plaintiff's argument, if taken to extremes, obviously would lead to absurd results.
*320 It is basic that a court, in interpreting a statute, must use its common sense. Voges v. Borough of Tinton Falls, 268 N.J. Super. 279, 285, 633 A.2d 566 (App.Div. 1993), certif. denied 135 N.J. 466, 640 A.2d 848 (1994). When no reasonable person could legitimately conclude a domestic relation continues to exist, a court should not issue a final restraining order. In that circumstance, the victim of violence must look to the provisions of the Code of Criminal Justice for protection. This is one of such cases.
It must be noted that the Legislature, in adopting the Act to Prevent Domestic Violence, N.J.S.A. 2C:25-17 to -33, sought to redress a perceived wrong. It concluded courts, law enforcement, and, indeed, society as a whole, regarded violence in a domestic setting as less serious than instances of violence between strangers. Peranio v. Peranio, 280 N.J. Super. 47, 53, 654 A.2d 495 (App.Div. 1995). By its terms, the statute did not supersede the protection offered in the Criminal Justice Code. N.J.S.A. 2C:1-1 to 98-4. Rather, the provisions of the statute were designed to offer still more protection to victims in the context of families, household members or those involved in a dating relationship. Corrente v. Corrente, supra, 281 N.J. Super. at 247, 657 A.2d 440. Such additional protection is necessary since spouses, former spouses, persons sharing parentage, and the like, often have continuing substantial reason or need in the future to deal with each other. For sure, the dynamics, pressures, complexities, and emotions involved in such relationships are such that the persons involved often continue to have contact with each other notwithstanding the violence. Without question, this circumstance is in stark contrast to that confronting strangers or, indeed, even friends who have been the victims of violence, but who do not have familial, emotional or financial ties with the person who has abused them. Unlike those involved in a domestic relationship, such persons can reasonably expect that there will be no need for them ever to come in contact with their abuser in the future.
This distinction goes to the essence of domestic violence. That is, "domestic violence" is a term of art that describes a *321 pattern of abuse or controlling behavior which is injurious to its victim. Peranio v. Peranio, supra, 280 N.J. Super. at 52, 654 A.2d 495. It has been found in that context that the focus of the Legislature concerned regular, serious abuse between spouses. Corrente v. Corrente, supra, 281 N.J. Super. at 247, 657 A.2d 440; N.J.S.A. 2C:25-18.
In this case the evidence revealed only one contact between plaintiff and defendant following the conclusion of their dating relationship prior to the events of January 19, 1996. That contact was in the nature of a phone call on December 30, 1993, which was recorded by plaintiff on her answering machine.
In this case, a significant time gap separates the alleged act of violence from the conclusion of the dating relationship and there was no evidence of continuation of violence or any ongoing controlling behavior on the part of defendant towards plaintiff prior to the events of January 19, 1996. See Jutchenko v. Jutchenko, 283 N.J. Super. 17, 20, 660 A.2d 1267 (App.Div. 1995). Consequently, the provisions of the statute have no application. Therefore, plaintiff's application for a final restraining order is denied.