689 A.2d 145

SHARI SMITH,[1] PLAINTIFF–RESPONDENT, v. ELLEN MOORE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 23, 1997—Decided February 14, 1997.

---

[1] The parties' names are fictitious to preserve privacy. *See Mann v. Mann*, 270 *N.J.Super.* 269, 637 A.2d 170 (App.Div.1993).

Before Judges KING and LOFTUS.

*John Gero*, attorney for defendant-appellant.

*Jon Kearney*, attorney for plaintiff-respondent.

The opinion of the court was delivered by

KING, P.J.A.D.

This is an appeal from a final restraining order entered against the defendant under the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33(Act). The order was based on a series of harassing phone calls allegedly made by defendant to plaintiff from November 1995 through April 1996. *N.J.S.A.* 2C:33–4(a).[2] We conclude that the Superior Court Family Part

---

[2] *N.J.S.A.* 2C:33–4(a) states in pertinent part:

Except as provided in subsection d., a person commits a petty disorderly persons offense if, with purpose to harass another, he:

judge did not have jurisdiction under the Act to enter a restraining order. The parties did not share a requisite domestic relationship adequate to predicate jurisdiction under the Act. The offense should have been prosecuted in municipal court as a disorderly persons offense. *N.J.S.A.* 2C:33–4(a).

Plaintiff, age 23, initiated this matter by filing a complaint in the Kearny Municipal Court on April 24, 1996. The municipal complaint charged that defendant, age 22, on April 23, 1996 did "with purpose to harass another, make or cause to be made, a communication or communications at an extremely inconvenient hour and in offensively coarse language specifically by calling at 12:15 a.m. Calling the victim 'a slut' and told the victim to 'fuck off.'" As a result of this municipal complaint, a plenary hearing ensued in the Family Part of the Superior Court in Hudson County on May 2, 1996. *N.J.S.A.* 2C:25–29(a).

The Family Part judge accepted the veracity of plaintiff's claims by a preponderance of the evidence, *see N.J.S.A.* 2C:25–29(a); *Roe v. Roe,* 253 *N.J.Super.* 418, 431, 601 *A.*2d 1201 (App.Div.1992), and entered an appropriate restraining order on May 2, 1996. On this appeal defendant raises four claims of error: (1) admission of a tape recording without proper foundation; (2) lack of proper verification from telephone company; (3) judge unfairly presumed defendant's guilt, and (4) other trial error was compounded by defendant's lack of counsel at the hearing.

We find no reversible trial error in the record but are convinced that the Family Part judge had no jurisdiction; the events bore no relationship to any past or present domestic relationship. We perceive this matter as a telephone harassment case, not a domestic violence case. Jurisdiction was not questioned at the trial level. Nor is jurisdiction questioned on appeal. *R.* 4:6–7; *R.* 5:1–1. But conscious of the burgeoning domestic violence case-load in the Superior Court, we conclude that jurisdic-

---

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm. . . .

tional scrutiny is necessary to insure that the Act is not trivialized and the Superior Court is not overrun with disorderly persons cases properly allocable to the municipal courts.[3]

Plaintiff testified on May 2, 1996 that she had known defendant "approximately a year." Plaintiff and defendant had been friends and lived at the shore together with other young women on weekends during June, July and August, in the summer of 1995. Plaintiff began to date defendant's "ex-boyfriend" at the end of October 1995.

Plaintiff testified to a series of hostile, threatening and harassing phone calls from defendant starting in November 1995, which culminated in the April 23 phone calls, subject of the complaint filed in the Kearny Municipal Court on April 24. The subject of the calls was plaintiff's relationship with her current "boyfriend," Martin M., who was also defendant's "ex-boyfriend," since late October 1995. Martin M. testified that he started dating plaintiff in the fall, about two months after he "broke-off" with defendant. From this we infer that Martin M. and the defendant had been dating over the summer of 1995, during the time plaintiff and defendant were weekend housemates at the shore for several months.

Jurisdiction turns on the text of *N.J.S.A.* 2C:25–19(d) defining a "victim of domestic violence." [4] For our purposes, the key words are "a person protected under this act ... shall include any

---

[3] The number of domestic violence filings in the Superior Court, Family Part, statewide for the past several years is:

> 1996—62,744
> 1995—63,465
> 1994—55,639
> 1993—53,321
> 1992—48,492
> 1991—36,054

[AOC Superior Court Caseload Reference Guide 1991–1996.]

[4] *N.J.S.A.* 2C:25–19(d) states:

person who is 18 years of age or older who is an emancipated minor and who has been subjected to domestic violence by ... any person who is a present or former household member." We discussed this broad definitional language in the 1991 Act in *Bryant v. Burnett,* 264 *N.J.Super.* 222, 225, 624 *A.*2d 584 (App. Div.1993), a case involving a man and a woman who had cohabitated for three months before the domestic violence erupted. We there concluded that the jurisdictional predicate "present or former household member" was easily satisfied, despite the claim by defendant that the arrangement was temporary and not the establishment of a permanent household. As John Cannel has observed, the jurisdictional definition "has given courts some difficulty." Cannel, *New Jersey Criminal Code Annotated,* comment 2 on *N.J.S.A.* 2C:25–20 (1996–1997).

Judge Skillman's opinion in *Jutchenko v. Jutchenko,* 283 *N.J.Super.* 17, 660 *A.*2d 1267 (App.Div.1995), demonstrates that there are rational limits to this very expansive definition of a victim of domestic violence. The plaintiff and defendant were brothers, age 42 and 47, who had not lived together in the same household for 20 years. Despite their former status as "household members," we there found no domestic violence Act jurisdiction because the Act is directed at "violence that occurs in a family or family-like setting. *N.J.S.A.* 2C:25–18." *Id.* at 20, 660 *A.*2d 1267. We said that domestic violence "is a term of art which defines a pattern of abusive and controlling behavior injurious to its victims," *id.* at 20, 660 *A.*2d 1267, quoting *Peranio v. Peranio,* 280

---

d. "Victim of domestic violence" means a person protected under this act and shall include any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member. "Victim of domestic violence" also includes any person regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. "Victim of domestic violence" also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

*N.J.Super.* 47, 52, 654 *A.*2d 495 (App.Div.1995). *See also Sperling v. Teplitsky,* 294 *N.J.Super.* 312, 320–21, 683 *A.*2d 244 (Ch.Div. 1996) (no domestic relationship for past five years); *Sisco v. Sisco,* 296 *N.J.Super.* 245, 686 *A.*2d 792 (Ch. Div.1996) (no domestic relationship for 15 years between father and daughter). We concluded in *Jutchenko* that the Legislature could not have intended the Act to extend to a dispute between two brothers who had not lived together for 20 years, "at least in the absence of any showing that the alleged perpetrator's past domestic relationship with the alleged victim provides a special opportunity for 'abusive and controlling behavior.'" *Jutchenko,* 283 *N.J.Super.* at 20, 660 *A.*2d 1267. We vacated the final restraining order.

 We find the case before us presents an equally tenuous, if not absurd, relationship to the purposes of the Act. The harassment found by the judge, phone calls sparked by jealousy over a "boyfriend," bore no relationship to the temporary, part-time seashore vacation housing arrangements which the litigating parties shared with other young women the prior summer. The dispute concerns jealousy over the affections of a young man, a scenario doubtless as old as recorded time but unrelated to any domestic circumstance among the parties and surely not within the contemplation of the Legislature as expressed in its findings and declarations set out in the Act, which are:

The Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional affects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

[*N.J.S.A.* 2C:25–18.]

The Act did not target harassment by jilted or jealous lovers barren of any domestic context. We reverse and remand for vacation of the final restraining order.

Reversed.