698 A.2d 553

LOIS SOUTH,[1] PLAINTIFF, v. GREG NORTH, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Camden County

May 19, 1997.

---

[1] The names of the parties are fictitious to protect the privacy of the complainants and their children. See *N.J.S.A.* 2C:25–33; *Roe v. Roe,* 253 *N.J.Super.* 418, 601 A.2d 1201 (App.Div.1992).

*Anne M. Mullan* for the plaintiff (Supervising Attorney, Rutgers University School of Law, Pro Bono Domestic Violence Project; third year law students *Mary Ann Jordan* and *Karen H. Shelton,* on the brief).

*Rebecca B. Condit* for the defendant (*Puff & Aimino* attorneys; *Ms. Condit,* on the brief).

DICAMILLO, J.T.C., temporarily assigned.

Plaintiff seeks a Final Restraining Order under the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33 (Act). One requirement plaintiff must satisfy is to prove that the defendant is a member of plaintiff's household. The question is whether the defendant, who never lived with the plaintiff, is considered a "household member" according to the Act. The Act provides no definition for "household member", and no reported decision is applicable to the present case.

Plaintiff, Lois South, age 74, lived with her daughter, Amy South, age 32, and grandson, Marc South, age 6, in the Mansion Apartments, Pine Hill, New Jersey. Defendant, Greg North, age 73, rented a different apartment in the same complex. Plaintiff and defendant had a dating relationship that ended seven years before the plaintiff filed a domestic violence complaint. Thereafter, defendant and Amy South became romantically involved. Marc South is a child of the relationship between Amy South and defendant.

Plaintiff and Amy South raised Marc South. After Marc's birth, defendant was a constant presence in Lois South's household. He went to the apartment at least three times each week, let himself in, stayed for long periods of time, cooked, ate and attended family gatherings. In addition, he regularly drove the South family on errands. Defendant and Amy South were engaged to be married, they saw each other regularly, and Greg North stayed overnight at the apartment when Lois South was not home.

Defendant had a volatile temper. He intimidated and threatened Lois South. He used his relationship with Amy South and Marc South as the grounds for his control. Greg North emotionally and physically abused Lois South. He threatened to forbid plaintiff from seeing her grandson and made false allegations of child neglect by plaintiff to the Division of Youth and Family Services. On March 25, 1997, Greg North hit Lois South with his cane, pushed her out of her apartment and locked the door. The Honorable Joseph M. Nardi Jr., J.S.C., granted Lois South a temporary restraining order (T.R.O.) against Greg North on the basis of these acts. After the T.R.O. was granted to plaintiff, Amy South moved into defendant's apartment with their son. Lois South was granted regular visitation with her grandson and now seeks a final restraining order.

For the entry of a Final Restraining Order, the Act requires:

(I) a determination that plaintiff is a "victim of domestic violence" defined in *N.J.S.A.* 2C:25–19(d),

(II) a determination that defendant committed an act of "domestic violence" defined in *N.J.S.A.* 2C:25–19(a) and

(III) a consideration of the nonexclusive factors found in *N.J.S.A.* 2C:25–29(a).

## (I)

With respect to requirement one, *N.J.S.A.* 2C:25–19(d) defines a victim of domestic violence as "a person protected under this act and shall include":

any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member. "Victim of domestic violence" also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or whom the victim anticipates having a child in common, if one of the parties is pregnant. "Victim of domestic violence" also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

In the present case, this first requirement is met if plaintiff can prove that she had a dating relationship with defendant or if she can prove that she and defendant were members of the same household. Lois South and Greg North had a dating relationship.

However, that relationship ended seven years prior to plaintiff filing a domestic violence complaint. At that time, the Act did not define a victim of domestic violence as someone who had a dating relationship with the defendant. In addition, the "dating relationship" criterion is not applied retroactively. *D.C. v. F.R.*, 286 *N.J.Super.* 589, 670 *A.*2d 51 (App.Div.1996).

Lois South may, however, be considered a victim of domestic violence if Greg North is a former member of her household. The term "household member" is not defined in the Act. When the plain language of a statute is unclear or ambiguous, the court must look at legislative intent to interpret the statute. *State v. Maguire*, 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980); *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). The court must harmonize the individual sections and read the statute in the way that is consistent with the overall legislative intent. *State v. Sutton*, 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993). Reading the statute as a whole will lead to a better feel not only for the letter of the law, but for the spirit as well. *Beaudoin v. Belmar Tavern Owners Ass'n*, 216 *N.J.Super.* 177, 184, 523 *A.*2d 256 (App.Div. 1987).

The Domestic Violence Act of 1991 amended the definition of "victim" by removing the word "cohabitant" and replacing it with "household member." *N.J.S.A.* 2C:25–19. The intent of the amendment was to expand coverage of the Act. As a result of the amendment, protection was extended to any person who has a close relationship with his or her batterer.

The statute "encourages the broad application of the remedies available under this Act in the civil and criminal courts of this State." *N.J.S.A.* 2C:25–18; *Desiato v. Abbott*, 261 *N.J.Super.* 30, 33, 617 *A.*2d 678 (Ch.Div.1992). The Legislature broadened the statute by amendment to cover unforeseen and unspecified relationships that might deserve protection. In the present case, a determination that the defendant is not a household member would deny the plaintiff protection from the defendant. This result is inconsistent with the Act's intent to expand protection to

unforeseen victims of domestic violence. "Such additional protection is necessary since spouses, former spouses, persons sharing parentage, and the like, often have continuing substantial reason or need in the future to deal with each other." *Sperling v. Teplitsky*, 294 *N.J.Super.* 312, 320, 683 *A.*2d 244 (Ch.Div.1996).

The Legislature intended "to assure the victims of domestic violence the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18. This purpose bestows upon the victim of domestic violence all possible protection so long as defendant's constitutional rights are not violated. The term "household member" is here viewed liberally, and consistent with the legislative intent.

"Household" is such a broad term that one court called it "chameleon like" and suggested that "like obscenity, [it] falls into the category of terms which defy a precise definition, yet are readily recognizable when encountered." *Fireman's Fund of New Jersey v. Caldwell*, 270 *N.J.Super.* 157, 164, 636 *A.*2d 606 (Law Div.1993). Case law has developed under the Act, but there is no domestic violence case law that interprets the term "household member." Insurance, zoning and tort case law have set forth a liberal interpretation of the term. In insurance cases, the term "household member" is not limited to "family" or "blood." If a member's status is in doubt, and the inclusion of that member provides him with some benefit, then he is included in the household coverage. *Mazzilli v. Accident & Casualty Insurance Co. Of Winterthur, Switzerland*, 35 *N.J.* 1, 170 *A.*2d 800 (1961).

> Household is not a word of art. Its meaning is not defined in certain commonly known and universally accepted limits.... [*Id.* at 8, 170 *A.*2d 800] [T]he term 'household' or 'resident of the household' cannot be so limited and strait-jacketed as always to mean, regardless of the facts and circumstances, a collective body of persons who live in one house.
>
> [*Id.* at 14, 170 *A.*2d 800.]

In *Mazzilli*, the father and son "were close in personal relations as well as physical proximity." The boy was also "in and out" and took care of his father on occasion. *Id.* at 16, 170 *A.*2d 800. The son was a "household member" because of the "continuance of a

substantially integrated family relationship." *Id.* at 19, 170 *A.*2d 800. Therefore, a "substantially integrated family relationship" constitutes a household even if all members are not continuously under one roof. *Arents v. General Accident Insurance Co.,* 280 *N.J.Super.* 423, 429, 655 *A.*2d 936 (App.Div.1995).

In zoning and tort cases, the term "household" is analogous to the term "family." In *Borough of Glassboro v. Vallorosi,* 117 *N.J.* 421, 568 *A.*2d 888 (1990), ten college students living together had the stability and permanence to make a "family" for zoning purposes. A group home for disabled children was also deemed a "family." *Berger v. State of New Jersey,* 71 *N.J.* 206, 364 *A.*2d 993 (1976). The permanency and stability of the group were considered just as significant as the existence of a traditional family relationship.

In tort cases, the term "family" was broadened to take into consideration certain characteristics of a group of people who do not fit the strict definition of "family." *Dunphy v. Gregor,* 261 *N.J.Super.* 110, 617 *A.*2d 1248 (App.Div.1992). In *Dunphy,* there was an action to recover damages for negligent infliction of emotional distress; one of the elements of the tort was a marital or intimate familial relationship between plaintiff and the injured person. *Id.* at 117, 617 *A.*2d 1248. The plaintiff was the fiancée of the deceased and was living with him. In the holding, the court cited public policy concerns that plaintiff was a *de facto* family member. The court determined that public policy underlying workers' compensation is best served by holding petitioner covered. *Id.* at 120, 617 *A.*2d 1248.

It is clear that the meaning of "intimate familial relationship" for the purposes of eligibility to sue in tort must be based upon the qualities and characteristics of the particular relationship and not upon a mechanistic formula in a definition.

[*Id.* at 122, 617 *A.*2d 1248.]

In the insurance cases, a "household member" is viewed liberally where the purpose is to extend coverage. The intent of the Domestic Violence Act is to expand coverage by broadening its language. Greg North is a *de facto* household member by virtue

of his paternity to Marc South, his engagement to Amy South and his unlimited access to Lois South's home.

As in the zoning cases, the parties in this case were in a stable, permanent living arrangement for several years. Lois South, Amy South and Marc South lived together while Greg North had unlimited access to visit his fiancée and son. The entry of the T.R.O. against the defendant is the only reason the defendant's presence in plaintiff's home ended.

As in the tort case, the parties have the characteristics of household members and must not be bound to a rigid term which is unjust in these circumstances. In *Dunphy*, the court allowed the fiancée damages because "[t]o foreclose such a plaintiff from making a claim ... because her relationship with the injured person does not carry a particular label is to work a potential injustice...." *Dunphy v. Gregor*, 261 *N.J.Super.* at 123, 617 *A.*2d 1248. With regard to the protection of the Domestic Violence Act, the intent of the legislature was to expand coverage to persons in non-traditional families. Although this family is a non-traditional family, its characteristics are within the intent of the Act.

This non-traditional family structure is evident from the testimony provided to the court. The parties shared food, cooking chores and responsibility for disciplining the child, and even—on occasion—living quarters. They also attended family functions as a group. The testimony indicates that Greg North is a *de facto* member of Lois South's family. Considering the important public policy concern of protecting household members from domestic violence, Greg North's status must be covered under the Act. Public policy concerns demand that the term "household member" be defined even more expansively in domestic violence cases than in insurance, zoning or tort cases. In the present case, the parties are more of a "family" than in the cases cited where the parties were considered "household members." All parties here are related to and involved with the child, who therefore constitutes the center of a set of family relationships.

Several domestic violence cases support a finding that Greg North is a member of Lois South's household. In *Bryant v. Burnett*, 264 *N.J.Super.* 222, 624 *A.*2d 584 (App.Div.1993), the parties lived together only three months, yet the court found the requisite "household member" status for the plaintiff and defendant. After looking at the facts, the court held that circumstances in the case "certainly involved more than assaultive conduct between casual friends or relative strangers and qualifies as domestic violence." *Id.* at 226, 624 *A.*2d 584. In *Desiato v. Abbott*, 261 *N.J.Super.* 30, 617 *A.*2d 678 (Ch.Div.1992), the court considered not only the amount of time the parties spent together, but a variety of other factors as well. For example:

1) the constancy of the relationship; 2) overnight stays at each other's residence; 3) personalty items such as jewelry ... stored at each other's residences; 4) shared property arrangements ...; and 5) familiarity with each other's siblings and parents socially in dining and/or entertainment activities together, and/or attendance together at extended family functions such as weddings.

[*Id.* at 34, 617 *A.*2d 678.]

*Bryant* and *Desiato* support the finding that Greg North and Lois South were household members. The parties were in a family-like situation for several years. There was a "constancy of relationship." Greg North spent the night, ate, cooked and attended family gatherings at this home.

Not all relationships qualify parties as household members. For example, parties who had not lived together for five years were held to have no relationship on which to mount a domestic violence claim. *Sperling v. Teplitsky*, 294 *N.J.Super.* 312, 683 *A.*2d 244 (Ch.Div.1996). A prior terminated pregnancy in common did not qualify as a sufficient relationship under the Act, since the parties were not living together and would have no reason to contact each other in the future. *Croswell v. Shenouda*, 275 *N.J.Super.* 614, 646 *A.*2d 1140 (Ch.Div.1994).

The case at hand is distinguishable from *Sperling* and *Croswell.* Plaintiff, plaintiff's daughter, plaintiff's grandson, and defendant had continuous contact for seven years. There is a need for continued contact due to plaintiff's relationship with Amy South

and Marc South and due to defendant's relationship with Amy South and Marc South. This case does not involve a dispute over money or property. Instead, it is a dispute over the controlling and abusive behavior of the defendant. It is not a case of one phone call. Instead, it is a case involving an assault and years of physical, mental and emotional abuse of an elderly woman who lives in fear of her grandson's father. The abuse of Lois South by Greg North over a period of seven years is purposeful behavior that will continue unless a final restraining order is granted.

In *Smith v. Moore*, 298 *N.J.Super.* 121, 689 *A.*2d 145 (App.Div.1997), the plaintiff and defendant shared weekend, vacation and summer quarters. Although both parties shared a dwelling, the court found that defendant was not a member of plaintiff's household. The principle is that the "perpetrator's past domestic relationship with the alleged victim provides a special opportunity for abusive and controlling behavior." *Id.* at 126, 689 *A.*2d 145. Without this relationship, a defendant is not a "household member" as defined in *N.J.S.A.* 2C:25–19(d). *Smith* established a test that: 1) the parties must "share a requisite domestic relationship" *Id.* at 123, 689 *A.*2d 145; and 2) the violence must occur in a "family or family-like setting." *Id.* at 125, 689 *A.*2d 145. Since Lois South's grandson is Greg North's son, and since Lois South's daughter has an intimate relationship with Greg North, the relationship between these parties meets the "requisite domestic relationship" test in *Smith.* And the relationship between Lois South and Greg North meets *Smith*'s "family or family-like setting" test.

Requirement number one of the Act is therefore satisfied: Greg North was a member of Lois South's household.

## (II)

With respect to requirement two, *N.J.S.A.* 2C:25–19(a) defines "domestic violence" as:

the occurrence of one or more of the following acts inflicted upon a person protected under this act by an adult or an emancipated minor:

(1) Homicide N.J.S. 2C:11–1 through –6

(2) Assault N.J.S. 2C:12–1

(3) Terroristic threats N.J.S. 2C:12–3

(4) Kidnapping N.J.S. 2C:13–1

(5) Criminal restraint N.J.S. 2C:13–2

(6) False imprisonment N.J.S. 2C:13–3

(7) Sexual assault N.J.S. 2C:14–2

(8) Criminal sexual contact N.J.S. 2C:14–3

(9) Lewdness N.J.S. 2C:14–4

(10) Criminal mischief N.J.S. 2C:17–3

(11) Burglary N.J.S. 2C:18–2

(12) Criminal trespass N.J.S. 2C:18–3

(13) Harassment N.J.S. 2C:33–4

(14) Stalking P.L.1992, c. 209 (C.2C:12–10)

The act of purposely striking Lois South with a cane was an assault. *N.J.S.A.* 2C:12–1. The act of pushing Lois South out of her home and locking the door was criminal restraint, *N.J.S.A.* 2C:13–2, and/or harassment. *N.J.S.A.* 2C:33–4. Greg North's abusive actions toward Lois South which continued for several years are also harassment. *N.J.S.A.* 2C:33–4(c). Therefore, Greg North committed acts of domestic violence as set forth in *N.J.S.A.* 2C:25–19(a), and so requirement number two of the Act is satisfied.

### (III)

■ With respect to requirement three, *N.J.S.A.* 2C:25–29(a) states "that the court shall consider but not be limited to the following factors":

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstance of the plaintiff and defendant;

(4) The best interest of the victim and any child;

(5) In determining custody and visitation the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

These six factors are not exclusive; rather, they are among the factors which must be considered when determining whether or

not to issue a restraining order. A history of domestic violence (factor one) is established based upon Greg North's abusive behavior toward Lois South which continued for several years.

Plaintiff sought visitation with her grandson, Marc South. However, since her grandson lives with defendant, plaintiff's visitations will expose her to regular contact with defendant. Therefore, taking into consideration the established history of abuse, the court finds that the immediate danger to plaintiff (factor two) will continue during the visitation process. Until the present time factors one and two were the only factors considered in the issuance of a restraining order. *Peranio v. Peranio,* 280 *N.J.Super.* 47, 654 *A.*2d 495 (App.Div.1995).

In this particular case, factor three is not applicable. However, factors four and five should be considered. With regard to factor four, it is in the best interest of both plaintiff and child to continue their relationship. Plaintiff and her grandson Marc spent many years living together, with plaintiff helping to raise Marc. Therefore, it is in Marc's best interest (factor four) to continue contact with his grandmother.

With regard to factor five, the victim's safety is protected if a restraining order against the defendant is entered. Plaintiff is vulnerable during visitations because Marc South lives with defendant. Therefore, visitation exchanges will require plaintiff to have regular contact with defendant. In order to protect plaintiff's safety during visitations (factor five), a restraining order must be issued. This satisfies factor five.

Requirement number three of the Act is therefore satisfied when the following factors are considered: previous history, immediate danger, best interest of the victim and child, or protection of the victim's safety.

In this case there is a history of domestic violence, a clear potential for future abuse, the need to safeguard the interest of a child, and the need to protect the victim during visitation. Further, Greg North is a *de facto* member of Lois South's household.

Therefore, Lois South is entitled to the protection of a final restraining order against Greg North in accordance with the Prevention of Domestic Violence Act.