795 A.2d 929 (2001)
350 N.J. Super. 479
John HAMILTON, Plaintiff,
v.
Jason ALI, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County.
December 20, 2001.
John Hamilton, plaintiff, Pro Se.
Carrie Lumi, Belmar, for defendant (Lomurro, Davison, Eastman & Munoz, attorneys, Freehold).
LOCASCIO, J.S.C.
Plaintiff, a college suitemate of defendant, sought a final restraining order as a result of an altercation which occurred on October 20, 2001. The question, of first impression, presented by the within matter, is whether a college dormitory suitemate is a "victim" within the meaning of the Prevention of Domestic Violence Act. For the reasons set forth infra, which supplements an oral opinion rendered October 23, 2001, this court answers this question in the affirmative.
Plaintiff and defendant are freshman undergraduate students at Monmouth University. Prior to their arrival on campus, the school assigned them to a nine-student suite, which consisted of a large common area, where the suitemates would eat on occasion, a common bathroom, and four bedrooms, three housing two students each, with the other housing three. Although all nine students had a key to the suite entrance, and all shared the bathroom and common area, which contained a television, stereo, couch, easy chairs, a pantry, and a trash can, the keys to the individual bedrooms were held only by the occupants of those rooms. Plaintiff and defendant were suitemates but not roommates, i.e. although they shared the suite's bathroom and common area, they did not share a bedroom.
Approximately one month into the semester, animosity developed between plaintiff and defendant. On October 20, 2001, while plaintiff was out with his girlfriend, defendant, in an attempt to obtain plaintiff's roommate's beer, kicked in and damaged plaintiff's bedroom door. When plaintiff returned to the suite and confronted defendant about the damaged door, defendant, the larger of two, put his finger to plaintiff's nose, and slammed him up against the wall, causing a bruise on plaintiff's hand. Although defendant's *930 aforesaid conduct constituted both an assault and criminal mischief, and therefore constituted acts of domestic violence within the meaning of the Domestic Violence Act, N.J.S.A 2C:25-19(a)(2), (10), resulting in this court's issuance of a final restraining order, defendant contended that plaintiff did not come within the Act's definition of "victim".
In any domestic violence case, the court must first determine whether or not plaintiff is a "victim of domestic violence", and thus entitled to relief. The Act defines a "victim of domestic violence" as:
any person who in 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member. "Victim of domestic violence" also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. "Victim of domestic violence" also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship. N.J.S.A. 2C:25-19(d) (emphasis added).
Although the question frequently posed in domestic violence cases is whether or not parties are "present or former household members", Bryant v. Burnett, 264 N.J.Super. 222, 624 A.2d 584, (App.Div. 1993) (temporary living arrangement established a household); South v. North, 304 N.J.Super. 104, 698 A.2d 553 (Ch.Div. 1997) (defendant, who lived in different apartment but in the same complex as plaintiff, found to be a member of plaintiff's household); Desiato v. Abbott, 261 N.J.Super. 30, 617 A.2d 678 (Ch.Div.1992) (girlfriend found to be a household member even though the parties had never married or shared the same legal residence), there is a dearth of cases applying the term to college students.[1]
Because the Act does not define "household member", it has been interpreted so as to expand the court's jurisdiction:
The Legislature could have provided a definition for "household member" if it intended to limit the court's interpretation of the term. Instead, the Legislature has expanded the jurisdictional grounds of the Act over the years. The Domestic Violence Act of 1991 amended the prior definition of "victim" by replacing the word "cohabitant" with "household member." It is clear that the intent of the amendment was to expand the coverage of the Act and to extend protection "to any person who has a close relationship with his or her batterer." South, supra, 304 N.J.Super. at 109, 698 A.2d 553. Furthermore, the Act has been further amended to expand the list of persons protected. While the prior law required that victim be cohabitants of opposite sex, or, if not of the opposite sex, related by blood, the current Act protects unrelated, same sex persons living together, elderly persons in the care of unrelated persons and any other present or former household member. Storch v. Sauerhoff, 334 N.J.Super. 226, 231, 757 A.2d 836 (Ch.Div.2000) (emphasis added).
Since the adoption of the Act, courts have found jurisdiction over a wide array of relationships. In Desiato v. Abbott, 261 N.J.Super. 30, 32-33, 617 A.2d 678 (Ch. Div.1992), the court, in concluding that a girlfriend was a household member within *931 the meaning of the Act, even though the parties had never married or shared the same legal residence, noted that:
While the Act itself does not define ("present or former household member"), the Legislative Declaration under N.J.S.A. 2C:25-18 states, in part, that "...it is the responsibility of the Courts to protect the victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public. To that end, the Legislature encourages ... the broad application of the remedies available under this Act in the civil and criminals Courts of this State." This stated legislative intent mandates this court to liberally construe the remedies available and to protect any victim of violence occurring in a "family or family-like setting". The phraseology of "family-like setting" invites by its very term a liberal interpretation. A flexible approach is warranted. "... The Legislature has recognized that Courts' equitable powers are particularly appropriate in the context of domestic relations", and the Act's Legislative Declaration has encompassed domestic violence in this reasoning.
Analysis of the legislative history shows that the language of the former domestic violence statute, N.J.S.A. 2C:25-3, required a victim to have cohabited, meaning having resided together in the same living quarters, with the defendant. The new Act deleted this definition of victim and adopted the broader term "household member". Although the Act does not define "household member", a fortiori, it cannot mean to hold residency and cohabitation as a prerequisite. "Household" is not a word of art and is a word of uncertain meaning. "Its meaning is not confined within certain commonly known and universally accepted limits." "Household" is generally treated to be a more comprehensive term than family, and most courts acknowledge that the term "family" itself is "variable and capable of different definitions depending on the context in which it is used." (citations omitted).
In South v. North, 304 N.J.Super. 104, 698 A.2d 553 (Ch.Div.1997), although defendant never actually lived with plaintiff, they each had a separate apartment in the same complex and "had a dating relationship that ended seven years before the plaintiff filed a domestic violence complaint." Id. at 107, 698 A.2d 553. Defendant subsequently engaged in a romantic relationship with plaintiff's daughter, which resulted in the birth of a child. Because plaintiff's daughter and grandson lived with plaintiff, "defendant was a constant presence in [plaintiff's] household. He went to the apartment at least three times each week, let himself in, stayed for long periods of time, cooked, ate and attended family gatherings." Ibid. In finding jurisdiction, the court reasoned:
The Legislature intended "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. This purpose bestows upon the victim of domestic violence all possible protection so long as defendant's constitutional rights are not violated. The term "household member" is here viewed liberally, and consistent with the legislative intent.
"Household" is such a broad term that one court called it "chameleon like" and suggested that "like obscenity, [it] falls into the category of terms which defy a precise definition, yet are readily recognizable when encountered." Id. at 110, 698 A.2d 553 (citation omitted).
*932 Judicial interpretations of "household", in contexts other than domestic violence, are instructive. In Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 170 A.2d 800 (1961), the court was required to decide whether the phrase "household", in a homeowner's liability insurance policy, extended coverage to the insured husband's wife, who resided in a separate bungalow with her son on the same tract of land 150 feet away from her husband's house. The father and son "were close in personal relations as well as physical proximity, and * * * the boy had the run of the place, * * * was `in and out'" of his father's home, and cared for his father on many occasions. Id. at 16, 170 A.2d 800. Although husband and wife had not lived under the same roof for two years, the court found, because of the "continuance of a substantially integrated family relationship," that the insured's wife was "a resident of the household within the scope of defendant's contract of insurance." Id. at 19,170 A.2d 800.
Mazzilli was reinforced, more recently, in another insurance case where the Court again decided that residence under a single roof is not dispositive as to the existence of a "household". In Gibson v. Callaghan 158 N.J. 662, 666, 730 A.2d 1278 (1999), a dispute arose from the fact that Mary Maccia, an elderly woman, was injured in a fall "that required her to move to her daughter's home * * * so that her daughter could care for her." Although she "intended to return to her house when her health improved", after three years, "because she was concerned about the risk of burglary and vandalism to her vacant house, Maccia asked her grandson, Donald Callaghan, and his wife, Marcella, to move into and care for her house." Ibid. Maccia continued to pay the property taxes and maintain her homeowner's insurance policy. When Marcella was sued for injuries sustained when her dog knocked down an elderly plaintiff, Marcella filed a third-party complaint against Maccia's homeowner's insurance carrier, claiming coverage by virtue of the fact that she was living in Maccia's home. Because they never lived under the same roof, at the same time, with Maccia, the issue was whether Donald and Marcella were residents of Maccia's household, thereby qualifying them as "insured persons" within the meaning of the policy. In finding that Donald and Marcella were members of the insured's household, the Court held that "[r]esidence under a common roof is not the touchstone of a `household'; rather, the meaning of `household' will vary depending on the circumstances of a given case." Id. at 677, 730 A.2d 1278.
In Borough of Glassboro v. Vallorosi, 117 N.J. 421, 432-33, 568 A.2d 888 (1990), a case factually similar to, but legally distinguishable from, the within matter, the Court found that a house occupied by ten college sophomores demonstrated sufficient "stability" to constitute "the functional equivalent of a family" for zoning purposes, because "[t]he students ate together, shared household chores, * * * paid expenses from a common fund," and intended to maintain the living arrangement until their graduation from college. Defendant, herein, contended that because his suitemates did not eat together, share the chores, pay expenses from a common fund, and intended to remain together for only the freshman year, the living arrangement lacked the "stability" associated with the notion of a Glassboro "family". However, Glassboro dealt with a local ordinance's definition of a "single housekeeping unit" for zoning purposes; it is not applicable to current domestic violence law which liberally construes the Act to protect victims so as to include even temporary living arrangements. Bryant v. Burnett, 264 N.J.Super. 222, 624 A.2d 584 (App.Div.1993).
*933 In Bryant v. Burnett, supra, 264 N.J.Super. at 224, 624 A.2d 584, plaintiff had been living with defendant for approximately three months because, according to defendant, "plaintiff had no place to stay and he offered her the opportunity to stay at his place as a favor. He did not intend any agreement to live together on any ongoing or permanent basis." Defendant further argued that "even though he and plaintiff had lived together for three months, their intent at that time that the arrangement was `temporary', deprived plaintiff of standing to bring a complaint under the Act, since she was not a member of his `household.'" Ibid. Defendant, in the instant matter, similarly contended that the living arrangement was intended to be temporary, i.e. only until the end of the academic year. In concluding that defendant came within the jurisdiction of the Domestic Violence Act, the Bryant court reasoned:
The parties were members of the same household at the time of the domestic violence charged. Intent as to the permanency of the relationship and the circumstances of the invitation or agreement to live together were irrelevant in this case where plaintiff had lived in defendant's household for three months. No precise period of residence is specified by the statute to make one a household member. This case certainly involved more than assaultive conduct between casual friends or relative strangers and qualifies as "domestic violence." Id. at 226, 624 A.2d 584 (emphasis added).
In Desiato v. Abbott, 261 N.J.Super. 30, 32, 617 A.2d 678 (Ch.Div.1992), the court, in deciding that plaintiff was a "household member" within the meaning of the Domestic Violence Act, relied upon the following facts:
plaintiff had remained overnight at defendant's residence on several occasions during a weekend or a mid-week night and * * * the parties were constant companions. * * *(Plaintiff) maintained clothes, jewelry and other personal effects at defendant's residence.
The court noted that to qualify as a "household member * * * requires more than a casual dating relationship but less than the parties residing together." Id. at 34, 617 A.2d 678. The court set forth the "following criteria, by way of example and not limitation," to be applied "on a case by case" basis to determine whether the facts establish a "family-like setting" within the meaning of the Domestic Violence Act:
1. Constancy of the relationship.
2. Over-night stays at each other's residence.
3. Personalty items such as jewelry, clothing and personal grooming effects stored at each other's residences.
4. Shared property arrangements, such as automobile usage, access to each other's bank accounts and one mailing address for billing or other legal purposes.
5. Familiarity with each other's siblings and parents socially in dining and/or entertainment activities together, and/or attendance together at extended family functions such as weddings. Ibid.
Applying these criteria to the within matter demonstrates that this college dormitory arrangement constitutes a "familylike setting" within the meaning of the Act. The first criteria, the constancy of the relationship, is present by virtue of the close proximity of the parties' rooms, the common areas, and the reality of college life, which necessitate the parties' daily contact and interaction.
The second criteria, over night stays at each other's residences, also occur daily. The suite, as described above, is a close facsimile to that of a standard multi-bedroom apartment or house.
*934 The third criteria, personal items stored at each other's residence, is present in the form of personal grooming effects stored and used in the common bathroom.
The fourth criteria, shared property arrangements, applies because the parties used the furniture, stereo, television, pantry, and trash can contained within the common area.
There is no evidence that the fifth criteria, knowledge of and interaction with each other's families, applies to the within matter.
When confronted with a mother/stepdaughter relationship, the court, in Storch v. Sauerhoff, 334 N.J.Super. 226, 233, 757 A.2d 836 (Ch.Div.2000), defined the question, of whether or not a household member relationship exists, as whether the living situation "essentially places the plaintiff in a more susceptible position for abusive and controlling behavior in the hands of the defendant." In Storch, plaintiff's father married defendant, plaintiff's stepmother, 30 years before plaintiff sought protection under the Prevention of Domestic Violence Act. Plaintiff had not resided with defendant and her father for approximately 19 years. However, for the last 11 years plaintiff and defendant lived at separate residences on the same block, and plaintiff's children and her half-sister's children (defendant's grandchildren) often played together on a lot "directly to the rear of plaintiff's home", which lot defendant often visited to be with the children. Id. at 233, 757 A.2d 836. Plaintiff attended "various dinners, family and religious functions at [defendant's] home," and "defendant on occasion care[d] for the plaintiff's children." Id. at 234, 757 A.2d 836. In rejecting defendant's contention that plaintiff was "neither a `family' member, nor a member of the household", the court noted:
[w]hile the defendant may not be a blood relative, the defendant has been a member of the plaintiff's family for the past 30 years. Moreover, the parties have maintained a close living arrangement for more than a decade. Id. at 233, 757 A.2d 836. * * *The parties share, whether by choice or circumstance, a "substantial integrated family relationship" where each has separate sleeping quarters but must interact on a frequent basis. Id. at 235, 757 A.2d 836 (emphasis added).
In concluding that plaintiff and defendant were household members within the meaning of the Domestic Violence Act, the court held that "a determination as to a party's status as a `household member' must be based upon `the qualities and characteristics of the particular relationship and not upon a mechanical formula in a definition.'" Ibid. (citation omitted).
Because, in the case sub judice, plaintiff and defendant "each has separate sleeping quarters but must interact on a frequent basis" and because "the qualities and characteristics" of their relationship (i.e. daily contact for one month with the potential for one academic year, each having a key to the suite entrance, and sharing the bathroom and common area) placed plaintiff "in a more susceptible position for abusive and controlling behavior in the hands of the defendant," Storch v. Sauerhoff, supra, 334 N.J.Super. at 233-35, 757 A.2d 836, "(t)his case certainly involved more than assualtive conduct between casual friends or relative strangers." Bryant v. Burnett, supra, 264 N.J.Super. at 226, 624 A.2d 584. For these reasons, this court holds, as a matter of law, that these college suitemates are "household members" and therefore come within the jurisdiction of the Prevention of Domestic Violence Act.
NOTES
[1] Indeed, in a recent case in which the majority declined to decide the issue, the dissent opined that to extend domestic violence to college roommates would be "absurd". In re Lovell, 226 Mich.App. 84, 572 N.W.2d 44 (1997).