813 A.2d 1210 (2003)
356 N.J. Super. 590
Toren TRIBUZIO, Plaintiff-Respondent,
v.
Charles RODER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 2002.
Decided January 10, 2003.
*1211 Richard V. Gilbert argued the cause for appellant (Evan F. Nappen, attorney; Mr. Nappen, on the brief).
Respondent did not file a brief.
Before Judges KING, LISA and FUENTES.
The opinion of the court was delivered by LISA, J.A.D.
We consider in this appeal whether a former dating partner, after a three-year hiatus from the end of the dating relationship, is a protected person under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to 35(Act). Defendant, Charles Roder, seeks reversal of a Final Restraining Order (FRO) issued under the Act in favor of plaintiff, Toren Tribuzio. Defendant argues that notwithstanding a prior dating relationship, plaintiff is not a protected person under the Act, and the evidence does not support a finding of an act of domestic violence. We reject these arguments and affirm.

I
The parties dated for a year, from September 1997 to September 1998. The incident that precipitated the complaint under the Act occurred on October 15, 2001. As plaintiff was leaving a supermarket, defendant approached her to give her a set of car keys and a book that belonged to her, which he had in his possession since the time of their dating relationship. He had been carrying these items in his car, hoping to encounter plaintiff so he could return the items.
According to plaintiff, defendant approached her in front of the supermarket, holding these items, and stated, "How am I supposed to give these back to you if you won't talk to me?" Plaintiff continued walking and informed defendant she did not wish to speak to him. Defendant followed her yelling, "What the hell did I *1212 ever do to you that you would go to the police? What the hell did I ever do to you that you won't talk to me?" Plaintiff proceeded to her car. Defendant pulled his car behind hers, blocking her in her parking space, continuing to ask the same questions. Plaintiff got into her car and started the engine. Defendant finally said, "if you won't talk to me, then write to me", and he left. This incident lasted a "couple of minutes." Plaintiff was upset by the incident, and when she got home she called the police. The next day she met with the police, and on October 17, 2001 her application for a temporary restraining order was granted.
Defendant's version of the October 15, 2001 incident was substantially the same as plaintiff's, except he denied using vulgarities, stating he asked her to "please" tell him what he did wrong. He also denied blocking her car in, although he acknowledged pulling up behind plaintiffs parked car, but only so he could attempt to talk to her again after she refused to talk to him in front of the supermarket. He also acknowledged raising his voice, but claimed it was only for the purpose of enabling plaintiff to hear him.
The evidence also established other incidents of unwanted contact initiated by defendant during the three-year hiatus since the parties stopped dating. For some months after the breakup, defendant frequently drove up and down plaintiffs street, pulled into her driveway and called her from his cell phone. Plaintiff called the police and had them speak to defendant. This conduct did not stop, although plaintiff threatened to again call the police. He sent flowers, letters, gifts and videotapes. She called the police again. He called plaintiffs friends and neighbors, inducing her neighbors to call the police. Defendant built a web site using plaintiffs business name and his e-mail address, without her authorization. He also had business cards printed with her name on them. An aspect of the depiction on the web site could be characterized as offcolor, or even pornographic. Plaintiff also reported these actions to the police. On all of these occasions, plaintiff refrained from signing a domestic violence complaint.
After a hearing in the Family Part on October 25, 2001, Judge Friend issued an FRO, concluding that plaintiff was protected under the Act and that defendant's conduct constituted harassment and stalking, the two predicate offenses alleged in plaintiffs complaint. See N.J.S.A. 2C:25-19a(13), (14). The judge credited plaintiffs version of the October 15, 2001 incident and of the intervening incidents. His factual findings are supported by adequate, substantial and credible evidence, and we will not disturb them on appeal. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974).

II
Defendant contends that on October 15, 2001 plaintiff was not a protected person under the Act because their dating relationship ended three years earlier. Defendant recognizes that the Act's definition of "victim of domestic violence" includes "any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19d. Relying on Sperling v. Teplitsky, 294 N.J.Super. 312, 683 A.2d 244 (Ch. Div.1996), however, he argues that because the parties had not been in a dating relationship for a significant period of time, they never married or had children, and their contacts after the breakup of their relationships were minimal, the Act does not apply. Id. at 317-18, 683 A.2d 244. We do not agree.
*1213 In Sperling, after a four to five-year hiatus from a dating relationship that produced no children, defendant encountered plaintiff and her current live-in boyfriend in a car owned by the boyfriend. Defendant repeatedly kicked the car. This conduct was apparently motivated by an ongoing business dispute between defendant and the current boyfriend, which was not related to plaintiff. During the incident, defendant expressed no harsh or angry words towards plaintiff. Id. at 316, 683 A.2d 244. During the four or five years since the parties ended their dating relationship, the only contact between them was one phone call by defendant more than two years before the car-kicking incident. Id. at 321, 683 A.2d 244.
The court concluded that although a literal reading of N.J.S.A. 2C:25-19d would appear to confer protected-person status to any former dating partner, at any time and under any circumstances, this would be an illogical construction of the statute. The court noted that "domestic violence" is a term of art describing a pattern of abuse or controlling behavior which is injurious to the victim, Peranio v. Peranio, 280 N.J.Super. 47, 52, 654 A.2d 495 (App.Div. 1995), and the Legislature's focus in enacting the Act concerned regular, serious abuse between spouses, Corrente v. Corrente, 281 N.J.Super. 243, 247, 657 A.2d 440 (App.Div.1995). Sperling v. Teplitsky, supra, 294 N.J.Super. at 320-21, 683 A.2d 244. The court reasoned that the Act provides additional protection to specified individuals because "spouses, former spouses, persons sharing parentage, and the like, often have continuing substantial reason or need in the future to deal with each other." Id. at 320, 683 A.2d 244. Thus, "the dynamics, pressures, complexities, and emotions involved in such relationships are such that the persons involved often continue to have contact with each other notwithstanding the violence." Ibid.
In Sperling, the court thus concluded that with a four to five year hiatus from the end of the dating relationship, only one isolated intervening contact, and no evidence of continuing violence or ongoing controlling behavior, plaintiff was not a protected person under the Act. Id. at 321, 683 A.2d 244. We reached a similar result in Jutchenko v. Jutchenko, 283 N.J.Super. 17, 660 A.2d 1267 (App.Div. 1995). We held that the Act does not apply to a dispute between two middleaged brothers who had not lived together in the same household for twenty years, "at least in the absence of any showing that the alleged perpetrator's past domestic relationship with the alleged victim provides a special opportunity for `abusive and controlling behavior.'" Id. at 20, 660 A.2d 1267 (quoting Peranio v. Peranio, supra, 280 N.J.Super. at 52, 654 A.2d 495).
Jurisdiction under the Act was also found lacking in Sisco v. Sisco, 296 N.J.Super. 245, 686 A.2d 792 (Ch.Div.1996). There, an adult daughter filed a complaint under the Act against her father, with whom she had not resided in the same household for fifteen years. Plaintiff alleged several episodes of alleged abuse by her father during her adolescent years while living in the same household, but the judge found these to be insignificant, describing one as an "isolated incident of borderline excessive parental discipline." Id. at 247, 686 A.2d 792. In the intervening fifteen years the parties had intermittent contact. They were estranged for extended periods when the father withheld financial support because of his disapproval of his daughter's conduct. The judge found no abusive and controlling behavior by the father based on "instances of parental guidance and support or the withholding of same, which the adult plaintiff accepted or rejected by the exercise of her *1214 own voluntary choice." Id. at 249, 686 A.2d 792. The precipitating event, in which plaintiff alleged that her father physically assaulted her, arose out of a disagreement over the medical treatment and nursing home care being received by plaintiffs elderly grandmother. Id. at 247, 686 A.2d 792.
"The Act and its legislative history confirm that New Jersey has a strong policy against domestic violence." Cesare v. Cesare, 154 N.J. 394, 400, 713 A.2d 390 (1998). The Act is remedial in nature and should be liberally construed to achieve its salutary purposes. Ibid. Remedial statutes should be construed liberally, giving their terms the most extensive meaning of which they are reasonably susceptible. Global Am. Ins. Managers v. Perera Co., 137 N.J.Super. 377, 386, 349 A.2d 108 (Ch. Div.1975), affd o.b., 144 N.J.Super. 24, 364 A.2d 546 (App.Div.1976). An express purpose of the Act is "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. We apply these principles in evaluating the protection afforded under the Act against "a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19d.
The passage of time from the end of the dating relationship is only one factor to be considered in determining the availability of the Act's protection. The extent and nature of any intervening contacts as well as the nature of the precipitating incident must also be considered. No mathematical formula governs the outcome. A qualitative analysis is required, weighing and balancing the nature and duration of the prior relationship, the duration of the hiatus since the end of that relationship, the nature and extent of any intervening contacts, the nature of the precipitating event, and any other appropriate factors. The ultimate issue is whether, in light of these factors, the victim was, at the time of the precipitating event, subjected to potential abusive and controlling behavior related to and arising out of the past domestic relationship. If so, the victim is in need of and entitled to the special protection provided by the Act.
Applying these principles to this case, we agree with the trial judge's conclusion that plaintiff was a protected person on October 15, 2001. The prior dating relationship was for a significant duration, one year. Although the intervening hiatus of three years was of significant duration, the unwanted contacts initiated by defendant were frequent and their nature demonstrated a continuing emotional attachment on defendant's part and an effort to control plaintiff's behavior and to harass her. The ongoing incidents induced plaintiff to call the police on several occasions and were obviously upsetting to her. Because she did not finally seek the protection of the Act until the supermarket incident, she should not be placed at a disadvantage in availing herself of its protection.
Indeed, it is somewhat typical in domestic abuse situations that a victim will try to avoid signing a complaint under the Act, hoping the perpetrator will just leave her alone, and then, after a cumulation of incidents, the victim takes the necessary legal action. Finally, the nature of the precipitating event was clearly related to the former dating relationship. Defendant carried personal items belonging to plaintiff with him in his vehicle, to provide an opportunity to have personal contact with her. When the opportunity occurred, he questioned her about their prior relationship, and it may reasonably be inferred he was attempting to reestablish a relationship with her.
These circumstances are materially distinguishable from those in Sperling, Jutchenko and Sisco. In Sperling, the hiatus was four to five years and the only intervening contact was a phone call, of no *1215 apparent significance, recorded on plaintiffs answering machine. In Jutchenko, the hiatus was twenty years and with no intervening contact. In Sisco, the hiatus was fifteen years, and the intervening contact was not characterized by controlling and abusive conduct by the defendant. In none of those cases was the precipitating event related to or motivated by the prior domestic relationship. In those cases the victim was not subjected to potential abusive and controlling behavior by the defendant related to and arising out of the past domestic relationship.
III
We reject defendant's contention that his conduct did not constitute an act of domestic violence, defined in the Act as a specified offense under the Code of Criminal Justice inflicted upon a person protected by the Act. N.J.S.A. 2C:25-19a; Corrente v. Corrente, supra, 281 N.J.Super. at 248, 657 A.2d 440. One such offense is harassment, N.J.S.A. 2C:33-4. N.J.S.A. 2C:25-19a(13).
A person is guilty of harassment if with purpose to harass another, he "[m]akes... a communication ... in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2:33-4a. Defendant's conduct on October 15, 2001, in which he was angry and frustrated at plaintiff for rebuffing him, he used coarse and offensive language, and he blocked in plaintiffs car, especially considered in light of his multiple prior unwanted and upsetting contacts with plaintiff, satisfies the elements of this offense. Because of this determination, we need not address whether defendant's conduct also constituted stalking.
Affirmed.