# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0448-17T1

N.K.,

      Plaintiff-Respondent/
Cross-Appellant,

v.

S.R.,

      Defendant-Appellant/
Cross-Respondent.

_____

      Submitted May 28, 2020 – Decided July 20, 2020

      Before Judges Alvarez and DeAlmeida.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-0450-17.

      Deborah A. Rose, attorney for appellant/cross-respondent (Deborah A. Rose and David Perry Davis, on the briefs).

      Menar & Menar, attorneys for respondent/cross-appellant (Paula A. Menar, of counsel and on the briefs).

PER CURIAM

Defendant S.R.[1] appeals from an April 20, 2017 final restraining order (FRO) entered against him by the Family Part pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, and a June 30, 2017 amended FRO directing him to pay plaintiff N.K.'s counsel fees. Plaintiff cross-appeals from provisions of an August 31, 2017 order establishing a weekly payment schedule for defendant's payment of the counsel fee award and maintaining the temporary child support awarded in the original FRO.[2] We affirm.

I.

The following facts are derived from the record. Plaintiff and defendant were married in 2012 and have one minor child. The marriage was arranged by the parties' parents and was contentious from its inception.

On September 27, 2016, plaintiff filed a complaint in the Family Part seeking a temporary restraining order, custody of the child, temporary child

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

[2] Although defendant's notice of appeal lists the August 31, 2017 order, which denied in part his motion for reconsideration, he does not address the order in his briefs. We, therefore, consider his appeal of that order to have been waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

A-0448-17T1

support, and other relief. She alleged defendant committed an act of domestic violence on September 11, 2016. It is undisputed that on that date the parties were residents of Virginia visiting plaintiff's parents in New Jersey. They do not dispute that they took a car trip with their child to New York to visit relatives. At a hearing, the parties offered divergent accounts of what transpired on their trip back to New Jersey.

According to plaintiff, defendant became increasingly angry during the drive home about her disagreeing with him earlier in the day. Plaintiff testified that defendant, while driving fast, was screaming at her and banging his hands on the steering wheel, frightening the child, and endangering the safety of the occupants of the car. She testified that while on the New Jersey Turnpike, defendant pulled the car to the shoulder of the highway and ordered her and the child to get out of the vehicle. According to plaintiff, after a moment or two, defendant exited the car, grabbed plaintiff by the arm, and forcefully dragged her and the child back into the car.

According to defendant, the parties were in New York when plaintiff got out of the car on her own volition, grabbed their daughter from the back seat, and walked a block or so while speaking to her mother on the phone. He testified he got out of the car, diffused the situation by linking arms with plaintiff, and

A-0448-17T1

convinced her to return to the vehicle. He testified that the remainder of the trip to New Jersey was uneventful, claiming plaintiff fabricated the New Jersey incident in order to establish jurisdiction here for the parties' anticipated dispute over custody of the child.

The parties separated for good once they arrived at the home of plaintiff's parents. Plaintiff took the child into her parents' house, and defendant drove away without collecting the clothes and other belongings he brought for the visit. Defendant concedes he returned alone to the former marital home in Virginia after plaintiff and the child exited the car. Plaintiff has resided at her parents' home since that day.

Plaintiff also alleged she suffered a history of abuse at defendant's hands. She accused defendant of repeatedly referring to her as a "useless" wife and alleged he would frequently twist her arm during arguments. In addition, she alleged several incidents of past abuse, testifying that defendant: (1) ordered her out of the car and forced her to walk home in cold weather when they lived in Minnesota; (2) locked her out of the marital house in a cold garage; (3) became so enraged that she was forced several times to hide in a bathroom or bedroom; and (4) pushed plaintiff and their child down a few stairs during an argument. Defendant denied having ever abused plaintiff.

4

After nearly nineteen hours of testimony, the trial court, on April 20, 2017, issued a lengthy oral opinion granting plaintiff's application for an FRO. The court found that with respect to September 11, 2016, "plaintiff's version was more credible, more likely to be true, than the defendant's version, applying the preponderance of the evidence standard." In addition, the court found defendant to lack credibility and that small inconsistencies in plaintiff's testimony were immaterial.

Applying the two-pronged test established in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the court first found defendant had committed a predicate act of harassment as defined by N.J.S.A. 2C:33-4. The judge based this decision on its finding that the turnpike incident was alarming conduct by defendant and included an offensive touching when he dragged plaintiff back into the vehicle.

The court also found plaintiff established a need for an FRO because the parties' child would bring them into contact with each other, creating opportunities for further abusive and controlling behavior by defendant. The court found defendant's past conduct demonstrated his desire to exert power and control over plaintiff, whom he treated like a child. The court rejected defendant's argument that plaintiff's contact with him after the September 11,

2016 incident, including the retrieval of her belongings from their Virginia home while defendant was present, was evidence of her lack of fear of defendant. The court also awarded plaintiff temporary custody of the child and directed defendant to pay plaintiff temporary child support of $100 per week.

On June 30, 2017, the court granted plaintiff's motion for attorney's fees in the amount of $24,300. The court ordered defendant to pay the award within thirty days.

Thereafter, defendant filed a motion for reconsideration seeking, in relevant part, an order allowing him to pay the award of counsel fees in installments. Plaintiff opposed that aspect of defendant's motion and cross-moved for reconsideration seeking, in relevant part, an increase in the temporary child support awarded in the FRO. In plaintiff's moving papers and during oral argument on the motions, the court was informed that plaintiff, about to complete a year of residence in New Jersey, intended to file a divorce complaint on September 12, 2017.

On August 31, 2017, the court entered an order allowing defendant to pay the counsel fees award in $100 monthly installments. The court noted that "[a]ny further economic issue regarding the payment of these fees, such as the effect of equitable distribution, can be addressed" in the contemplated divorce

proceeding. Noting that the parties disputed the amount of defendant's income, the court concluded that "all economic issues are better handled on the FM docket particularly because there may be factual disputes regarding the parties' income, earning capacity, etc." The court, therefore, denied plaintiff's request to increase the child support award.

Defendant's appeal and plaintiff's cross-appeal followed. After initial briefing, at the parties' request, we remanded the matter to allow them to enter into a property settlement agreement (PSA), which was incorporated into the final judgment of divorce in the dissolution proceeding. The PSA contains an agreement on child support:

> It is understood and agreed that the Husband has been paying child support to the Wife in the sum of $100 per week in accordance with an Order entered on FV-11-450. Said child support [is] payable through the Probation Department.
>
> By Agreement of the parties, [t]he Husband's child support obligation shall be retroactive[ly] modified effective September 12, 2017 (the date the Complaint for Divorce was filed) to be $223 per week. The Probation Department shall adjust their records accordingly. The arrears created by the retroactive modification of Husband's child support obligation shall be satisfied by Husband forwarding a payment of $2,500 within 30 days of the execution of this Agreement, and any remaining arrears being satisfied at the rate of $100 a week.

7

> Further, by Agreement, effective the date the Final Judgment of Divorce is entered, the Husband's child support obligation shall be modified to account for the payment of alimony and his new employment that resulted in an increase in annual earned income. Accordingly, effective 2/21/19[,] . . . the Husband's child support obligation shall be modified to be $248 per week.

After remand, defendant argues that the trial court erred by entering an FRO, both in its finding that he engaged in an act of domestic violence and in its determination that plaintiff was in need of protection from further abuse. In addition, he argues plaintiff settled all claims to child support in the PSA, including for the period from the filing of the domestic violence complaint to the filing of the divorce complaint. Plaintiff argues that the court erred when it granted defendant's request for a payment plan for the award of counsel fees. In addition, she denies that the PSA settled her claim for child support in the period before the filing of the divorce complaint and argues that the trial court should have held a hearing to determine an appropriate amount of child support under the FRO until the date she filed her divorce complaint.

## II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429

8

N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We should not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The entry of an FRO requires the trial court to adhere to the two-pronged test established in Silver, 387 N.J. Super. at 125-27, and endorsed by our Supreme Court in J.D. v. M.D.F., 207 N.J. 458 (2011). First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402).

Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)); see also J.D., 207 N.J. at 476. This determination requires evaluation of:

> (1)    The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2)    The existence of immediate danger to person or property;
>
> (3)    The financial circumstances of the plaintiff and defendant;
>
> (4)    The best interest of the victim and any child;
>
> (5)    In determining custody and parenting time the protection of the victim's safety; and
>
> (6)    The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a); see also Cesare, 154 N.J. at 401.]

Further, the need for a restraining order turns on whether "the victim was, at the time of the precipitating event, subjected to potential abusive and controlling behavior related to and arising out of the past domestic relationship. If so, the

10

victim is in need of and entitled to the special protection provided by the Act." Tribuzio v. Roder, 356 N.J. Super. 590, 597 (App. Div. 2003).

Having carefully reviewed the record in light of these principles, we affirm the April 20, 2017 FRO, later amended, for the reasons stated in the trial court's comprehensive April 20, 2017 oral opinion. We add the following comments.

Harassment is a predicate act under the statutory framework. N.J.S.A. 2C:25-19(a)(13). A person commits harassment if, "with purpose to harass another," he or she:

> (a) Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively course language, or any other manner likely to cause annoyance or alarm;
>
> (b) Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> (c) Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

For a finding of harassment under N.J.S.A. 2C:33-4, the actor must have the purpose to harass. Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995) (citing D.C. v. T.H., 269 N.J. Super. 458, 461-62 (App. Div. 1994); E.K.

v. G.K., 241 N.J. Super. 567, 570 (App. Div. 1990)). Finding a party had the purpose to harass must be supported by "some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D., 207 N.J. at 487 (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)). A purpose to harass may be inferred from the evidence. See State v. McDougald, 120 N.J. 523, 566-67 (1990). Common sense and experience may also inform a determination or finding of purpose. State v. Hoffman, 149 N.J. 564, 577 (1997) (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)).

The trial court, having had the opportunity to observe the testimony of each of the witnesses first-hand, based its decision largely on credibility determinations. We see no basis to disturb the judge's conclusion that plaintiff presented the more credible version of events and that she truthfully described what took place on the side of the highway in New Jersey and in the couple's past. In addition, the court's conclusion that defendant committed an act of domestic violence by harassing plaintiff is supported by sufficient, credible evidence. Compelling plaintiff and her small child to exit a vehicle on the shoulder of a major highway, even for a few minutes, was an alarming and dangerous act intended to instill fear and control over plaintiff. In addition,

grabbing plaintiff's arm and pulling her aggressively back into the car was an offensive touching. The record supports the finding of harassment under both N.J.S.A. 2C:33-4(b) and (c).

The record also supports the trial court's determination that the parties' continued need to remain in contact with respect to parenting their child, along with defendant's history of exercising control over plaintiff, justified entry of an FRO to protect plaintiff from future abuse by defendant.

III.

As compensation for a victim of domestic violence, a trial court may award reasonable attorney's fees. N.J.S.A. 2C:25-29(b)(4). A counsel fee award is left to the sound discretion of the trial court and is disturbed only on the rarest occasions. Gnall v. Gnall, 432 N.J. Super. 129, 165 (App. Div. 2013). "[D]eterminations by trial courts [regarding legal fees] will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007) (second alteration in original) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)); accord Redine v. Pantzer, 141 N.J. 292, 317 (1995).

Defendant challenges the award of counsel fees only if we determine the trial court erred with respect to entry of the FRO. Plaintiff, however, argues the

trial court abused its discretion by permitting defendant to pay the fee award in monthly installments. We disagree. The trial court acted within its discretion to accommodate defendant's financial circumstances through a monthly payment schedule. The trial court determined that, given defendant's lack of liquid assets, apart from a retirement account, and the looming divorce action in which issues of equitable distribution would arise, it was unreasonable to order him to pay $24,300 in thirty days. It was within the court's discretion to allow defendant to pay the award in installments.

IV.

Nor do we see error in the trial court's decision to continue the $100 weekly child support payment set in the FRO. After a restraining order proceeding, the trial court may order "emergency support for minor children, to the victim and other dependents, if any. An ongoing obligation of support shall be determined at a later date pursuant to applicable law." N.J.S.A. 2C:25-29(b)(10).

At the time the court heard the cross-motions for reconsideration, plaintiff's filing of a divorce complaint was imminent. As we previously explained,

> The Domestic Violence Procedures Manual (2004), which "serves as a procedural guide that prescribes the

14

steps in processing domestic violence matters, . . . [and] continues the judiciary's ongoing system-wide program of establishing uniform standards and best practices" specifically sets forth the manner in which a court must address issues concurrently presented in dissolution (FM) and domestic violence (FV) cases.

If there is a pending FM, all reliefs except the restraints shall be incorporated into the FM with the restraints continuing in the FV docket and on the FRO. Subsequent applications or modifications for support, custody or parenting time should take place within the FM docket number. The FV should be reopened and modified as needed so the FM and FV are consistent.

[Finamore v. Aronson, 382 N.J. Super. 514, 520 (App. Div. 2006) (alteration in original) (internal quotation omitted).]

Given the imminent filing of plaintiff's divorce complaint and the fact that defendant's income was disputed, the trial court did not abuse its discretion by deferring the question of temporary child support for resolution in the matrimonial matter. As noted, the parties entered into a PSA in the matrimonial matter that established defendant's child support obligation retroactive to the filing date of the divorce complaint. We see no obstacle to plaintiff seeking to reopen the domestic violence matter to seek modification of the temporary child support ordered in the FRO, subject to defendant's argument that the PSA was intended as a global settlement of the issue of child support.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0448-17T1