# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3403-23

R.M.L.,[1]

    Plaintiff-Respondent,

v.

D.R.B.,

    Defendant-Appellant.

_____

        Submitted June 3, 2025 – Decided June 11, 2025

        Before Judges Chase and Vanek.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-3028-24.

        The Tormey Law Firm, attorneys for appellant (Louis J. Keleher, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1]  We use initials and pseudonyms to protect the parties' privacy and the confidentiality of these proceedings in accordance with <u>Rule</u> 1:38-3(d)(10).

D.R.B. appeals the final restraining order (FRO) entered against her pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate act of assault, N.J.S.A. 2C:12-1(a)(1). We affirm.

I.

Following a two-day trial in June 2024, the trial court granted both parties' applications for FROs against each other. Since only D.R.B. appeals, we confine our recitation of the salient facts from the trial record to the FRO entered against her, and in favor of R.M.L.

R.M.L. and D.R.B. were domestic partners for approximately fourteen years before they broke up. They recoupled another fourteen years later, residing together at D.R.B.'s apartment in West Orange, New Jersey for approximately two and a half years prior to the entry of the FROs.

R.M.L.'s application for a restraining order against D.R.B. was based in part on a June 2023 assault, which occurred while R.M.L. was recovering from knee surgery. D.R.B. became so angry R.M.L. could not drive her to Queens, New York due to her injury, that she hit R.M.L.'s knee with her cane. R.M.L. testified she did not call the police at that time "because . . . [she] loved her. . . ."

In September 2023, D.R.B. attempted to stab her with a knife, ultimately

only "cutting [R.M.L.'s] finger," and bruising R.M.L.'s breast. Although R.M.L.'s audio recording of the incident was "indiscernible" according to the transcript provided by D.R.B.,[2] R.M.L. testified the recording showed D.R.B. verbally abused her, threatened her with a knife and stated, "I'm tired of you." Photographs of R.M.L.'s bloody nose and her cut finger were moved into evidence. D.R.B. was arrested, criminal charges were filed, and a court order prohibiting D.R.B. from contacting R.M.L. was entered. D.R.B. moved into her cousin's home in Queens.

Despite the no contact order, D.R.B. returned to her apartment in January 2024 because she feared she would "wear out [her] welcome at [her] cousin's house." When she returned to the apartment, she and R.M.L. "got into basically the same [issues]," stating they "bubbled up again."[3]

At the conclusion of trial, the court entered an FRO against D.R.B. based on the predicate act of assault, and entered an FRO against R.M.L. predicated on criminal mischief. The trial court rejected D.R.B.'s argument the assault

_____

[2] The audio recording played before the trial court was not provided to us on appeal.

[3] A series of events occurred during this visit which resulted in the trial court's grant of D.R.B.'s FRO against R.M.L. based on the predicate act of criminal mischief. R.M.L. does not appeal the FRO entered against her and, therefore, we need not detail those proofs.

should only be considered history between the parties, and cannot form the basis for a predicate act, finding the PDVA "does not set any line of demarcation as to what is a predicate act and what is history. It is up to the [trial court] to make that determination . . . ."

In entering the FRO against D.R.B., the trial court relied on R.M.L.'s testimony regarding the September 2023 assault and the photographs in evidence documenting her injuries. The trial court accepted R.M.L.'s testimony that she did not immediately request a TRO because there was a no contact order entered as a condition of D.R.B.'s release on the criminal charges as credible. The trial court also found D.R.B.'s contact with R.M.L. in January 2024 was a violation of her conditional release terms warranting "the maximum protection the law can provide."

The trial court then considered the second prong of Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006), determining factors one, two and six of N.J.S.A. 2C:25-29(a) were applicable. The trial court again found a history of domestic violence between the parties, and that D.R.B. posed an immediate danger to R.M.L. "stemming from the September 2023 assault and the violation of the conditional release terms."

D.R.B. appealed the entry of the FRO against her.

II.

A.

We begin by acknowledging our review of the trial court's entry of an FRO is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

B.

When the Legislature adopted the PDVA, "it made the Judiciary responsible for 'protect[ing] victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public.'" A.M.C. v. P.B., 447 N.J. Super. 402, 418 (App. Div. 2016) (alteration in original) (quoting

N.J.S.A. 2C:25-18).  It also "assure[s] the victims of domestic violence [are afforded] the maximum protection from abuse the law can provide."  Cesare, 154 N.J. at 399 (emphasis in original) (citing N.J.S.A. 2C:25-18).

"Remedial statutes [like the PDVA] should be construed liberally, giving their terms the most expansive reading of which they are reasonably susceptible."  N.G. v. J.P., 426 N.J. Super. 398, 409 (App. Div. 2012) (citing Donelson v. DuPont Chambers Works, 206 N.J. 243, 256 (2011)).  Additionally, "[t]he statutory term '[d]omestic violence' has been interpreted to apply to 'a pattern of abusive and controlling behavior injurious to its victims.'"  Ibid. (alteration in original) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995)) (emphasis added).  We reasoned that in determining whether to issue an FRO

> [n]o mathematical formula governs the outcome.  A qualitative analysis is required, weighing and balancing the nature and duration of the prior relationship, the duration of the hiatus since the end of that relationship, the nature and extent of any intervening contacts, the nature of the precipitating event, and any other appropriate factors.  The ultimate issue is whether, in light of these factors, the victim was, at the time of the precipitating event, subjected to potential abusive and controlling behavior related to and arising out of the past domestic relationship.  If so, the victim is in need of and entitled to the special protection provided by the [PDVA].

[Tribuzio v. Roder, 356 N.J. Super. 590, 597 (2003).]

When determining whether to grant an FRO pursuant to the PDVA, a trial court must make two determinations. Silver, 387 N.J. Super. at 125-27. "First, the [court] must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. After finding a predicate act, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021).

Assault is one of the predicate acts included in N.J.S.A. 2C:25-19(a). See N.J.S.A. 2C:25-19(a)(2). A person is guilty of assault if the person, "[a]ttempts to cause or purposely, knowingly[,] or recklessly causes bodily injury to another . . . ." N.J.S.A. 2C:12-1(a)(1). "'Bodily injury' is defined as 'physical pain, illness or any impairment of physical condition.'" State ex rel. S.B., 333 N.J. Super. 236, 242 (App. Div. 2000) (quoting N.J.S.A. 2C:11-1(a)). "'Even the slightest physical contact, if done intentionally, is considered a simple assault under New Jersey law.'" N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997) (quoting State v. Bazin, 912 F. Supp. 106, 115 (D.N.J. 1995)).

D.R.B. argues "the trial court improperly converted what was clearly a portion of the previous history of domestic violence between the parties as [the predicate act]," and maintains the assault in September 2023 is too attenuated to be the basis for the entry of the FRO against her. We are unconvinced.

We affirm the trial court's finding that D.R.B. committed the predicate act of assault by the preponderance of the evidence for substantially the same reasons articulated by the trial court in its thorough oral decision. R.M.L.'s credible testimony and the photographic proofs presented at trial established D.R.B. "assaulted [R.M.L.] and attempted to stab her with a knife" in September 2023. We are unpersuaded the September 2023 assault is too attenuated to be the basis of the FRO since the PDVA does not include a time-bar on seeking a restraining order based on a predicate act. Indeed "[n]o mathematical formula governs the outcome." Tribuzio, 356 N.J. Super. at 597.

D.

We discern no error with the trial court's entry of the FRO against D.R.B., when considering other allegations of assault that occurred during the parties' relationship history, including the June 2023 assault when D.R.B. hit R.M.L. in the knee after her operation. See Silver, 387 N.J. Super. at 126. We conclude

8

these incidents illustrate "a pattern of abusive and controlling behavior injurious to its victims.'" See N.G., 426 N.J. Super. at 409.

If the trial court finds the defendant committed a predicate act of domestic violence, it must then determine whether it "should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. "When the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO 'is most often perfunctory and self-evident.'" A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. Super. at 127).

However, in all cases, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in [N.J.S.A. 2C:25-29(a)(1) to (a)(6)], to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.[4] We also explained "when

---

[4] N.J.S.A. 2C:25-29(a) requires consideration of the following factors:

> (1) the previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse;

> (2) the existence of immediate danger to person or property;

determining whether a restraining order should be issued based on an act of assault or, for that matter, any of the predicate acts, the court must consider the evidence in light of whether there is a previous history of domestic violence, and whether there exists immediate danger to person or property." Id. at 126.

Thus, the trial court's findings under the second Silver prong also contemplate consideration of the length of time since the predicate act in order to assess whether there is immediate danger posed to the victim. If the trial court were to determine the predicate act was too attenuated, then the FRO would not be necessary to protect against "immediate danger or . . . further abuse." See Silver, 387 N.J. Super. at 127.

We are unpersuaded by D.R.B.'s argument that R.M.L. could not believe she was in "immediate danger" since the predicate assault occurred six months before her TRO application. The record is laden with evidence of physical abuse

---

(3) the financial circumstances of the plaintiff and defendant;

(4) the best interests of the victim and any child;

(5) in determining custody and parenting time, the protection of the victim's safety; and

(6) the existence of a verifiable order of protection from another jurisdiction.

between the parties, supported by photographic evidence of R.M.L.'s injuries from the June 2023 assault following her knee operation and the September 2023 assault involving the knife leading to D.R.B.'s arrest. The record established a need for the FRO against D.R.B. because the parties have had "a pattern of abusive and controlling behavior" spanning nearly thirty years. See N.G., 426 N.J. Super. at 409. We therefore conclude the trial court did not abuse its discretion in determining that D.R.B. poses "future danger or threats of violence [to R.M.L.]" warranting the entry of the FRO. See D.M.R., 467 N.J. Super. at 322.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3403-23