# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2804-24

B.D.,[1]

    Plaintiff-Respondent,

v.

A.B.,

    Defendant-Appellant.

_____

    Submitted January 27, 2026 – Decided February 13, 2026

    Before Judges Firko and Vinci.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-1101-25.

    Jonathan F. Marshall, attorneys for appellant (Brian C. McCauley, on the brief).

    Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings. R. 1:38-3(d)(10).

In this one-sided appeal, defendant A.B. appeals from the March 26, 2025 final restraining order (FRO) entered against him in favor of plaintiff B.D. pursuant to the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35, based on the predicate act of simple assault, N.J.S.A. 2C:12-1(a)(1). The Family Part judge determined an FRO was necessary to protect plaintiff from future acts of domestic violence. The parties are unrelated but resided together at a residence where they shared common areas. We affirm because the judge's factual findings are supported by substantial credible evidence, and she correctly applied the law.

I.

The facts were established at the one-day hearing in March 2025. Plaintiff was represented by counsel and defendant was self-represented. The parties were the only witnesses who testified. The parties are Polish immigrants. They utilized the aid of a Polish interpreter at the hearing. Photographs taken of plaintiff's injuries and a criminal order previously entered against defendant were moved into evidence.

The parties were housemates and rented out separate rooms in a residence located in Trenton. Plaintiff acted as the landlord's agent, collecting rent and utility payments from the tenants. In her complaint, plaintiff alleged that on

A-2804-24

February 1, 2025, defendant "purposely and knowingly" struck her left arm with a closed fist. Plaintiff claimed defendant then kicked her left leg, resulting in "visible signs of injury" to her left arm, shoulder, and leg, including bruises and scratches. Plaintiff stated defendant also grabbed her nose with his middle and pointer fingers and twisted it, causing her nose to bleed.

The following day, February 2, plaintiff filed a domestic violence complaint and sought the issuance of a temporary restraining order (TRO) against defendant, which was granted. Defendant was served with the TRO and arrested on criminal charges related to the incident. The day after obtaining the TRO, February 3, plaintiff went to the hospital for an examination and treatment. X-rays were taken of her left arm and leg, she was prescribed pain medication, and released.

Plaintiff and her attorney appeared at the initial hearing date, which was scheduled for February 19, 2025, but defendant did not. The FRO hearing was rescheduled for March 18, 2025. Before proceeding, the judge informed defendant that he had a right to retain an attorney, what plaintiff was alleging against him, and what she had to prove. The judge explained the serious consequences associated with the entry of an FRO. The judge also instructed defendant that the hearing would be limited to the allegations in the complaint.

3

The judge asked defendant if he wanted an adjournment in order to retain an attorney. Defendant told the judge he needed an attorney and requested an adjournment. The judge granted a one-week adjournment,[2] once again, advised the parties there would be no further adjournments, and rescheduled the matter on a try or dismiss basis.

Nonetheless, defendant did not retain an attorney. At the FRO hearing, plaintiff testified defendant moved to the residence in September 2024, when she had already been residing there. There were three tenants who resided at the residence, the parties and a man, H.P. On the first day of each month, the parties would meet in the kitchen to handle the bills.

It is undisputed by the parties that on Saturday night, February 1, 2025, the parties had an argument over money in the kitchen. Plaintiff testified that H.P. was not home at the time. Plaintiff testified that she asked defendant to pay his share of the utilities because he was already behind on payment for the previous month and owed the landlord $300. According to plaintiff, defendant advised her he was not going to pay.

---

[2] The judge indicated on the record that the FRO hearing was rescheduled to March 25, 2025 at 1:30 p.m. However, the record indicates the FRO hearing occurred on March 26, 2025.

A-2804-24

Plaintiff testified the disagreement escalated from an "exchange of words" to a "brawl." She repeatedly asked defendant why he was not going to pay, and in response, he attacked her, consistent with the allegations set forth in her complaint. Plaintiff explained she could not sleep afterwards that night, so a female friend came over and spent the night with her.

In seeking an FRO, plaintiff testified "I am scared of this man very much because he attacked me twice. I don't know what else he is going to do to me. I sometimes pass him in the street." Plaintiff testified she goes to the same stores and bank as defendant.

The judge permitted defendant to cross-examine plaintiff. In response to a question as to why plaintiff did not yell or call for help during the incident, plaintiff testified she "was yelling" and asked him "to stop."

Defendant testified the parties were seated at the kitchen table, but that the conversation consisted of plaintiff informing him of her intention to raise his rent and require him to pay a "new" $80 fee for cleaning supplies. In contrast to plaintiff's testimony, defendant claimed their discussion concluded with him electing to vacate the premises at the end of the month. Defendant testified he had no "motive" to "attack" and "beat" plaintiff. When he decided not to pay, defendant stated he left the table and walked away. Defendant claimed he did

A-2804-24

not call H.P. to testify because H.P. was possibly "afraid" and maybe "because he still lives there." Defendant testified he is "[sixty-eight] years old," "retired," and has never been arrested before. Defendant stated he never beat up anyone before, "especially a woman."

Defendant testified that on the following day, February 2, the parties had an additional disagreement about finances, and then he "went to [his] room." Three hours later, he was arrested. Following his testimony, defendant informally requested an adjournment to call as witnesses the two police officers who took plaintiff's report of the incident to ascertain if they observed plaintiff's "blood" or "bruises." The judge denied defendant's request, noting it was his obligation as a litigant to subpoena third-party witnesses. In addition, the judge reasoned having the police officers testify on another day was not going to support defendant's "theory." The judge also denied defendant's request to have his friend T.G. testify, who helped him find the residence, on relevancy grounds.

After considering the parties' testimony and items moved into evidence, the judge placed her findings of fact and conclusions of law on the record. The judge deemed plaintiff "very credible" and found defendant "not to be credible." The judge found plaintiff had "an open demeanor," was "inherently believable," and "quite emotional." Relying heavily on the photographs, the judge observed

6

plaintiff's injuries were inflicted on the date of the incident even though the photographs were taken a day or two later. The judge highlighted defendant "twisted" plaintiff's nose so badly that "she suffered a bloody nose." The judge noted it was "very clear" that there were red marks around the area where plaintiff described defendant "grabbed her by the nose." In addition, the judge found defendant "punched" plaintiff's legs and arms "at least eight times repeatedly" and "[y]ou can almost see the footprint right in the top of the thigh."

The judge determined plaintiff sustained a "humongous bruise on the upper part of her thigh" and a "very wide" bruise on her arm. The judge credited plaintiff's testimony that these injuries "caused her pain." The judge emphasized that defendant did not testify with "candor," avoided her questions, and barely looked at her during the course of his testimony.

Regarding jurisdiction, the judge reasoned the parties qualified as household members under the Act because they had lived at the same residence for several months. The judge then described plaintiff's injuries in detail, noting she sought treatment at a hospital and then went to police headquarters to file her complaint and seek a TRO. The judge concluded that plaintiff proved the predicate act of assault by "well more than a preponderance of the credible evidence."

A-2804-24

Finally, the judge found that plaintiff needed an FRO. In doing so, the judge credited plaintiff's testimony that she is afraid of defendant. The judge analyzed both Silver[3] prongs and recognized the need for an FRO is "perfunctory" in cases like this, where a plaintiff is physically assaulted, and determined plaintiff needed an FRO to protect her from future abuse. The judge determined there is "obvious immediate danger" to plaintiff given the "significant physical injuries" defendant inflicted upon her and in light of the "money dispute" between the parties. This appeal followed.

Before us, defendant argues:

> (1) the judge effectively amended the complaint without providing him an opportunity to address same warranting a remand for a new FRO hearing before a different judge;
>
> (2) the judge's attempt to validate the photographs without his participation raised more questions than it answered;
>
> (3) the denial of his adjournment request constituted an abuse of discretion;
>
> (4) he was denied a meaningful opportunity to cross-examine plaintiff; and
>
> (5) the judge's findings were insufficient to justify the entry of the FRO.

---

[3] Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).

II.

Generally, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and will review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

A-2804-24

The purpose of the Act is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence[,]" J.D., 207 N.J. at 473 (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe [the Act] to achieve its salutary purposes." Cesare, 154 N.J. at 400.

Our Legislature has pronounced in the Act "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions." N.J.S.A. 2C:25-18. Moreover, the Act's remedies are to be applied broadly in this State's civil and criminal courts. Ibid. "Accordingly, the Act affords greater protection than generally given to victims of crimes." S.Z. v. M.C., 417 N.J. Super. 622, 625 (App. Div. 2011).

Pursuant to the Act, a "victim of domestic violence" is defined as:

> any person who is [eighteen] years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present household member or was at any time a household member. 'Victim of domestic violence' also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child

10

in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. 'Victim of domestic violence' also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

[N.J.S.A. 2C:25-19(d) (emphasis added).]

The Act does not define the term "household member." Nonetheless, the term has been interpreted liberally when expanding the court's jurisdiction in a domestic violence situation. S.P. v. Newark Police Dep't., 428 N.J. Super. 210, 224 (App. Div. 2012). The Act, N.J.S.A. 2C:25-3 to -16, as originally enacted, mandated cohabitation between the alleged perpetrator and the victim. Ibid. However, in 1991, the Act expanded the parameters of the definition to include "present or former household member[s]." Ibid. We have addressed the breadth of this definition. R.G. v. R.G., 449 N.J. Super. 208, 219 (App. Div. 2017) (quoting Tribuzio v. Roder, 356 N.J. Super. 590, 595 (App. Div. 2003)). When considering if a defendant is a "former household member," courts should evaluate if "the 'perpetrator's past domestic relationship with the alleged victim provides a special opportunity for abusive and controlling behavior.'" N.G. v. J.P., 426 N.J. Super. 398, 409 (App. Div. 2012).

Further, New Jersey courts have liberally construed the definition based on the premise that the [Act] is directed at "violence that occurs in a family or

family-like setting."  Ibid. (quoting Smith v. Moore, 298 N.J. Super. 121, 125 (App. Div. 1997)).  The touchstone of a "household" is not whether parties reside under a single roof, but instead varies based on the circumstances.  Gibson v. Callaghan, 158 N.J. 662, 672 (1999).

Courts have applied the six-factor test enunciated in Coleman v. Romano, 388 N.J. Super. 342, 351 (Ch. Div. 2006) when determining whether a party is considered a "former household member" pursuant to the Act:

> (1) the nature and duration of the prior relationship;
>
> (2) whether the past domestic relationship provides a special opportunity for abuse and controlling behavior;
>
> (3) the passage of time since the end of the relationship;
>
> (4) the extent and nature of any intervening contacts;
>
> (5) the nature of the precipitating incident; and
>
> (6) the likelihood of ongoing contact or relationship.
>
> [N.G., 426 N.J. Super. at 409-10 (quoting Coleman, 388 N.J. Super. at 351-52).]

The focus is "whether the parties have been so entangled, emotionally or physically—or they will be in the future—that the court should invoke the Act to protect the plaintiff and prevent further violence."  Id. at 410 (quoting Coleman, 388 N.J. Super. at 351).

12

In 2015, the definition was amended again, replacing "former household member" with "any other person who is a present household member or was at any time a household member." N.J.S.A. 2C:25-19(d); R.G., 449 N.J. Super. at 219. We determined the 2015 amendments reflect a "significant change" in expanding the scope of the "household member" definition. R.G., 449 N.J. Super. at 219-20.

When determining whether to grant an FRO, a trial judge must engage in a two-step analysis. J.D. v. A.M.W., 475 N.J. Super. 306, 313 (App. Div. 2023) (citing Silver, 387 N.J. Super. at 125-27). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth" in N.J.S.A. 2C:25-19(a) has occurred. Silver, 387 N.J. Super. at 125. Second, the judge must assess whether a restraining order is necessary to protect the victim from immediate danger or to prevent further abuse. J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 126-27). The second determination depends on the seriousness of the predicate offenses, and history of domestic violence between the parties, including prior threats, harassment, and physical abuse. Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)). An

13

FRO may only be granted when both prongs have been met. See J.D., 207 N.J. at 475-76; see also N.J.S.A. 2C:25-29(a).

A request for an adjournment rests in the sound discretion of the trial judge, who, in the context of a domestic violence case, must balance both the interests of both parties to a speedy but fair resolution. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003) (recognizing a "request for an adjournment is addressed to the trial judge's discretion"). Thus, we review a denial of an adjournment request under an abuse of discretion standard. Smith v. Smith, 17 N.J. Super. 128, 131-32 (App. Div. 1951).

## III.

Defendant contends the judge "effectively amended the complaint" without giving him additional time to confront the "new allegations" that arose at the FRO hearing. Defendant maintains plaintiff testified about two alleged incidents—February 1 and 2—whereas her complaint only mentions February 1. The judge reviewed the content of plaintiff's cell phone and concluded she was assaulted on February 2, without his participation. The judge stated:

> [V]ery clearly, sir, she was bruised on her leg significantly on February 2[] when she took those pictures. . . . The picture in P-1 is the big bruise on her thigh where she says that you kicked her, and that was taken the next day. . . P-2 and P-5 of her arm is very

14

> clear to me that something happened to her on February 2[].

> [(Emphasis added).]

Defendant argues that if it was clear something happened to plaintiff on February 2, then due process required an adjournment of the hearing, so he could defend himself as to those allegations. Additionally, defendant points to plaintiff's testimony suggesting she took the photographs of her injuries on February 3, when the attack occurred on February 1. He argues plaintiff waited two days after the assault and one day after she went to the police to take these photographs. After gaining knowledge of this at the hearing, defendant asserts he had good reason to ascertain whether law enforcement observed plaintiff's bruising on February 2, and it was unreasonable for him to assume he needed to subpoena third-party witnesses, such as the police officers, before then.

Additionally, defendant argues he was treated unfairly because the judge held at the prior FRO hearing date that the rescheduled hearing would be "try or dismiss." Then, during the second FRO hearing, the judge rejected his second adjournment request but later advised plaintiff's counsel she "would . . . allow [her] to amend and bring the defendant back" regarding the February 2 incident, if she had failed to prove that the February 1 alleged assault was "a pretty significant event." We are unpersuaded.

A-2804-24

The Act specifically requires a hearing be held "within [ten] days of the filing of a [domestic violence] complaint." N.J.S.A. 2C:25-29(a). However, "ordinary due process protections [still] apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing." J.D., 207 N.J. at 478. "At a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" Ibid. (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003)). Therefore, "it is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint." L.D. v. W.D., Jr., 327 N.J. Super. 1, 4 (App. Div. 1999). "It constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint. . . ." Ibid. (quoting J.F. v. B.K., 308 N.J. Super. 387, 391-92 (App. Div. 1998)).

The New Jersey Domestic Violence Procedures Manual specifically speaks to when a judge makes a motion sua sponte to amend a party's initial TRO complaint:

> [w]hen the allegations in the plaintiff's complaint are incomplete and/or it becomes evident at the final hearing that the plaintiff is seeking a restraining order based upon acts outside the complaint, the court, either

16

> on its own motion or on a party's motion, shall amend the complaint to include those acts.
>
> Due process requires that the judge make an inquiry as to whether the defendant needs additional time to prepare due to the amended complaint. A brief adjournment may be required if the judge determines that the defendant did not have adequate notice and needs time to prepare. . . .
>
> [New Jersey Domestic Violence Procedures Manual § IV (G)(5)(b)(2) (2022).]

We conclude the judge preserved defendant's right to due process. At the outset of the first FRO hearing date where defendant appeared, the judge explained to him how the hearing would be conducted, the legal standards for the entry of an FRO, and the consequences he would face if an FRO was entered. Further, the judge advised defendant that he had a right to retain an attorney. Defendant does not claim he misunderstood any of the judge's instructions. Rather, on appeal, he suggests he was confronted by "new allegations" at the time of the hearing, and the judge should have "liberally" granted his adjournment request.

Although the judge altered the date of when she believed plaintiff's injury occurred, the complaint itself was not amended. Moreover, the judge never misconstrued the alleged predicate act or changed the nature of plaintiff's injuries as alleged in the complaint. Plaintiff was not permitted to allege

17

additional acts of domestic violence or a previous history of domestic violence at the hearing.

Further, there is no suggestion in the record that defendant was not prepared to proceed or address plaintiff's allegations or evidence. Instead, defendant testified without hesitation regarding the incident alleged. We are convinced the judge based her ultimate findings on events "clearly set forth in the complaint." Pazienza v. Camarata, 381 N.J. Super. 173, 186 (App. Div. 2005).

Our courts have distinguished the present situation with previous matters:

> This is not a situation like J.F. . . . , where the predicate offense of the domestic violence finding was based upon conduct not set forth in the complaint. Nor is it a situation like H.E.S.[, 175 N.J. at 321] . . ., where the complaint was, in effect, amended by testimony regarding acts not set forth in the complaint, and defendant was denied a continuance of reasonable duration to meet the charges which ultimately formed the basis of the predicate offense.
>
> [Id. at 185-86.]

Here, the judge satisfied her obligation to determine if defendant had adequate notice and time to prepare by initially advising defendant of his right to an adjournment at his first appearance, granting his adjournment request, and correctly finding it was his obligation as a litigant to subpoena any witnesses to

A-2804-24

testify prior to the hearing, which he had over one month to accomplish. See R. 1:9-1 ("[a] subpoena may be issued by . . . [a] party in the name of the clerk.") Additionally, the judge specifically ordered the parties during the hearing to stop testifying about incidents not alleged in the complaint, such as the February 2 knife incident. Under these circumstances, there was no error and no "effective amended complaint" considered by the judge. We add defendant fails to articulate a scintilla of evidence, except what witnesses might testify to, that he would have produced to refute plaintiff's allegations.

IV.

Next, defendant argues the judge disregarded her responsibility to exercise control over the mode and order of presenting witnesses and evidence by taking plaintiff's cell phone, which contained photographs of her injuries, and searching for date stamps without including him in the process. N.J.R.E. 611(a). Defendant claims his due process rights were violated because he was denied a meaningful opportunity to review plaintiff's cell phone. Defendant also maintains the judge violated Rule 1:2-3, because she failed to preserve all evidence pending appeal and the photographs on plaintiff's cell phone were not produced as exhibits.

A-2804-24

We are convinced the judge did not err, and similarly convinced that defendant was not prejudiced or deprived of due process. In L.M.F. v. J.A.F., Jr., we likewise held the trial court properly permitted text messages to be read into the record by plaintiff directly from her cell phone. 421 N.J. Super. 523, 527 n.2 (App. Div. 2011). Defendant did not object to this procedure at the hearing. It is of no moment that plaintiff did not produce paper copies of the photographs depicting her injuries. The judge found plaintiff's testimony was credible, and the photographs corroborated her testimony. We discern no abuse of discretion.

## V.

We reject defendant's argument he was denied a meaningful opportunity to cross-examine plaintiff. Defendant contends he was not permitted to question plaintiff directly with leading questions intended to highlight the key points of his defense, but instead, the judge translated his questions into open-ended questions. Defendant argues the judge did not even wait for plaintiff's counsel to object before ruling plaintiff did not have to answer certain questions.

The denial of the opportunity to cross-examine or present witnesses violates due process. Peterson v. Peterson, 374 N.J. Super. 116, 124-26 (App. Div. 2005). However, "[t]he conduct of a trial . . . is within the discretion of the

trial court." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003). This discretion is not disturbed "unless there is a clear abuse of discretion which has deprived a party of a fair trial." Ibid. The judge has broad authority to "exercise reasonable control over the mode . . . of interrogating witnesses," N.J.R.E. 611(a), and discretion regarding the scope of cross-examination. N.J.S.A. 611(b).

Therefore, our trial courts "retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." State v. Budis, 125 N.J. 519, 532 (1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). These limits, however, must not deprive a party of their right to due process by prohibiting one party from presenting relevant witnesses or from cross-examining other witnesses. Peterson, 374 N.J. Super. at 125-26.

We conclude the judge did not abuse her discretion by requiring defendant to proffer his cross-examination questions to her, who then conveyed them to plaintiff. There was a TRO in effect and defendant was restricted from having "any oral . . . contact or communication with [plaintiff]." Therefore, the judge was well within her discretion to conduct the hearing with the TRO in mind. We

21

defer to the limits the judge imposed and her considerations of safety and repetitive interrogation. See Budis, 125 N.J. at 532. In any event, the outcome would not have been affected based on the overwhelming substantial and credible evidence in the record supporting the issuance of the FRO.

To the extent that we have not commented on them explicitly, all remaining arguments presented by defendant lack sufficient merit to be discussed in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2804-24